**FIRST AMENDED COMPLAINT**
RANDY SPRINGER
1100 WARM CANYON WAY
LAS VEGAS, NV 89123
Tel. (702) 325-5024
springer.warmcanyon@outlook.com
PLAINTIFF PRO SE

USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED: 7 13 15

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

# UNITED STATES DISTRICT COURT

## SOUTHERN DISTRICT OF NEW YORK

RANDY SPRINGER

                    Plaintiff

vs.

U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR MASTR ASSET BACKED
SECURITIES TRUST 2005-HE1, MORTGAGE
PASS THROUGH CERTIFICATES, SERIES
2005-HE1;
MASTR ASSET BACKED SECURITIES
TRUST 2005-HE1, MORTGAGE PASS
THROUGH CERTIFICATES, SERIES 2005-
HE1;
THE CERTIFICATEHOLDERS OF MASTR
ASSET BACKED SECURITIES TRUST 2005-
HE1, MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2005-HE1;
MORTGAGE ASSET SECURITIZATION
TRANSACTIONS, INC.;
ROES 1-10 AND DOES 1-10, INCLUSIVE,
REPRESENTING A CLASS OF UNKNOWN
PERSONS WHO CLAIM OR HAVE THE
RIGHT TO CLAIM AN INTEREST IN
CERTAIN REAL PROPERTY LOCATED IN
LAS VEGAS, NEVADA,

Defendants.

---

Case No.

**FIRST AMENDED COMPLAINT FOR:**

1. **DECLARATORY RELIEF COUNTS 1-12 [28 U.S.C. §§ 2201, 2202];**
2. **FRAUD AND DECEIT;**
3. **PROMISSORY ESTOPPEL;**
4. **VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (DECEPTIVE PRACTICES ACT);**
5. **VIOLATION OF NEVADA REVISED STATUTES;**
6. **VIOLATION OF 15 U.S.C. § 1692 ET SEQ.;**
7. **VIOLATION OF 15 U.S.C. § 1641(g);**
8. **CANCELLATION OF INSTRUMENTS;**
9. **STATUTORILY DEFECTIVE FORECLOSURE**

**(JURY TRIAL DEMANDED)**

# FIRST AMENDED COMPLAINT

## TABLE OF CONTENTS

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Randy Springer**
1100 Warm Canyon Way, Las Vegas, NV 89123
Tel: (702) 325-5024
Email: Springer.WarmCanyon@outlook.com

                                                                              **PAGE**

PRELIMINARY STATEMENT ....................................................................2

NATURE AND SUMMARY OF THE ACTION .......................................6

JURIDICTION AND VENUE .................................................................10

THE PARTIES.......................................................................................11

OVERVIEW ..........................................................................................14

GENERAL AND FACTUAL ALLEGATIONS .......................................22

SECURITIZATION................................................................................27

DEFECTIVE FORECLOSURE .............................................................32

FIRST CAUSE OF ACTION,
    DECLARATORY RELIEF COUNT - 1 "TO DETERMINE STATUS OF
    DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202].............................37

SECOND CAUSE OF ACTION,
    DECLARATORY RELIEF COUNT - 2 "WAS THE LOAN IN DEFAULT AT THE
    TIME OF THE ASSIGNMENTS, IDENTIFIED AS INSTRUMENT NUMBERS
    200904080002148 & 20121105-0000603?"...............................................39

THIRD CAUSE OF ACTION,
    DECLARATORY RELIEF COUNT - 3 "DID THE VALUE OF PLAINTIFF'S
    PROPERTY AT THE TIME OF THE ASSIGNMENTS, IDENTIFIED AS
    INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 COMPLY WITH
    THE "80% VALUE-TO-LOAN RATIO" OF 26 U.S.C. §§ 860A-860G?..............42

FOURTH CAUSE OF ACTION,
    DECLARATORY RELIEF COUNT - 4 "DOES THE ASSIGNMENTS, IDENTIFIED
    AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 COMPLY
    WITH THE "TIMING REQUIREMENT" OF 26 U.S.C. §§ 860A-860G?"............44

FIFTH CAUSE OF ACTION,
    DECLARATORY RELIEF COUNT - 5 "DOES THE ASSIGNMENTS, IDENTIFIED
    AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 CONVEY A
    NOTE AND DEED OF TRUST THAT IS A "QUALIFIED LOAN" as defined by 26
    U.S.C. §§ 860A-860G?"............................................................................47

SIXTH CAUSE OF ACTION,
    DECLARATORY RELIEF COUNT - 6 "IS THE ASSIGNMENTS, IDENTIFIED AS
    INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 A "DEFECTIVE
    OBLIGATION" PURSUANT TO 26 U.S.C. §§ 860A-860G?".............................49

SEVENTH CAUSE OF ACTION,
    DECLARATORY RELIEF COUNT - 7 "DOES THE ASSIGNMENTS, IDENTIFIED
    AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 VIOLATE
    THE "BANKRUPTCY REMOTE" REQUIREMENT PURSUANT TO 26 U.S.C. §§
    860A-860G?" ...........................................................................................51

i

EIGHTH CAUSE OF ACTION,
   DECLARATORY RELIEF COUNT - 8 "DOES THE DELIVERY AND/OR TRANSFER
   OF THE PLAINTIFF'S NOTE YEARS AFTER THE TRUST'S CLOSING DATE
   RENDER THE REMIC STATUS OF THE TRUST VOID PURSUANT TO 26 U.S.C. §§
   860A-860G?" ............................................................................................................54

NINTH CAUSE OF ACTION,
   DECLARATORY RELIEF COUNT - 9 "IS THE DELIVERY AND/OR TRANSFER OF
   THE PLAINTIFF'S NOTE YEARS AFTER THE TRUST'S CLOSING DATE A
   VIOLATION OF SEC LAW?" .................................................................................55

TENTH CAUSE OF ACTION,
   DECLARATORY RELIEF COUNT - 10 "IS THE DELIVERY AND/OR TRANSFER
   OF THE PLAINTIFF'S NOTE YEARS AFTER THE TRUST'S CLOSING DATE A
   VIOLATION OF NEW YORK'S ESTATES, POWERS & TRUSTS LAW?" ......................57

ELEVENTH CAUSE OF ACTION,
   DECLARATORY RELIEF COUNT - 11 "DOES THE ASSIGNMENTS, IDENTIFIED
   AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 COMPLY
   WITH THE "TIMING REQUIREMENT" OF THE PROSPECTUS?" .................................58

TWELFTH CAUSE OF ACTION,
   DECLARATORY RELIEF COUNT - 12 "DOES THE ASSIGNMENTS, IDENTIFIED
   AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 CONVEY A
   "QUALIFIED LOAN" PURSUANT TO THE PROSPECTUS?" .............................................59

THIRTEENTH CAUSE OF ACTION,
   "DOES THE ASSIGNMENTS, IDENTIFIED AS INSTRUMENT NUMBERS
   200904080002148 & 20121105-0000603 CONVEY A "DEFECTIVE OBLIGATION"
   PURSUANT TO THE PROSPECTUS?" ...........................................................................60

FOURTEENTH CAUSE OF ACTION,
   CANCELLATION OF INSTRUMENTS ........................................................................61

FIFTEENTH CAUSE OF ACTION,
   FRAUD AND DECEIT..............................................................................................64

SIXTEENTH CAUSE OF ACTION,
   VIOLATION OF NEW YORK GENERAL BUSINESS LAW § 349 (THE "Deceptive
   Practices Act")...................................................................................................65

SEVENTEENTH CAUSE OF ACTION,
   VIOLATION OF NEVADA BUSINESS AND PROFESSIONAL CODE NRS  90.600. ......67

EIGHTEENTH CAUSE OF ACTION,
   FOR VIOLATION OF 15 U.S.C. § 1692e..............................................................72

NINETEENTH CAUSE OF ACTION,
   FOR VIOLATION OF 15 U.S.C. § 1641(g)............................................................75

TWENTIETH CAUSE OF ACTION,
   STATUTORILY DEFECTIVE FORECLOSURE ............................................................78

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Randy Springer**
1100 Warm Canyon Way, Las Vegas, NV 89123
Tel: (702) 325-5024
Email: Springer.WarmCanyon@outlook.com

1

CONCLUSION..................................................................................................84

PRAYER FOR RELIEF .................................................................................85

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Randy Springer
1100 Warm Canyon Way, Las Vegas, NV 89123
Tel: (702) 325-5024
Email: Springer.WarmCanyon@outlook.com

Pursuant to Federal Rules Of Civil Procedure Rule 15(a)(1)(B) Plaintiff takes this opportunity to amend/correct his Complaint Plaintiff Randy Springer, by and for his Complaint against Defendants, U.S. Bank National Association as Trustee for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1; the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1; the Certificateholders of the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1; Mortgage Asset Securitization Transactions, Inc.; ROES 1-10 and DOES 1-10, inclusive, representing a class of unknown persons who claim or have the right to claim an interest in certain real property located in Las Vegas, Nevada (collectively, "Defendants"), aver as follows:

## **PRELIMINARY STATEMENT**

1.  Plaintiff has diligently attempted to state the facts of this case in an abbreviated manner as is customary in a complaint. However, the complexity and diversity of the rules and statutes of the involved Internal Revenue Codes, Securities and Exchange Commission Statutes, Uniform Commercial Code, and Nevada Revised Statutes require that Plaintiff clarify that Plaintiffs' claims are not based on the failure of the Defendants to comply with Prospectus but based upon the Defendants' failure to comply with the Prospectus for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1, the Promissory Note and Deed of Trust.

2.  Plaintiff is informed and believe, and based on such information and belief, avers that pursuant to 15(a)(1)(B) when a 12(b)(6) is filed Plaintiff may Amend his complaint as a matter of course.

3.  As Plaintiff is Pro Se and has is attempting to effectively state his claims, with the upmost respect for the Court's precious resources and for the purpose of judicial efficiency, Plaintiff makes the following statements so there is no confusion by the Court or the Defendants:

FIRST AMENDED COMPLAINT

2

A.  Plaintiff **DOES NOT** assert Defendants failed to comply with **POOLING AND SERVICING AGREEMENT** for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1.

B.  Plaintiff **DOES** assert Defendants failed to comply with **PROSPECTUS** for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1.

C.  Plaintiff emphasizes that a **POOLING AND SERVICING AGREEMENT** is a contract for which he is not a party.

D.  Plaintiffs emphasizes that a **PROSPECTUS** is **NOT** a contract for which his are not a party but a formal legal document, which is required by and filed with the Securities and Exchange Commission, that provides details about the investment offering for sale to the public that contains details on the investments' objectives, strategies, risks, performance, distribution policy, tax considerations, fees and expenses, and management.

E.  Plaintiff emphasizes that although a **PROSPECTUS** and a **POOLING AND SERVICING AGREEMENT** may both provide details on the investments' objectives, strategies, risks, performance, distribution policy, tax considerations, fees and expenses, and management, they are **NOT** the same document and **MAY NOT** be interchangeable.

F.  Plaintiff is informed and believe, and based on such information and belief, avers that Defendants' Counsel will continue to misdirect the Court's attention to Decisions that have concluded that Homeowners are not party to the **POOLING AND SERVICING AGREEMENT**. Insofar as to assist in clarity, Plaintiff will remove any and all statements pertaining the **POOLING AND SERVICING AGREEMENT** so that it is abundantly clear to all parties that Plaintiff **DOES NOT** assert Defendants failed to comply with **POOLING AND**

FIRST AMENDED COMPLAINT

3

**SERVICING AGREEMENT** for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1.

G. Plaintiff is informed and believe, and based on such information and belief, avers that the "assignment of the Note and Deed of Trust (hereinafter "ADOT1"), was recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 20090408-0002148 contains an unqualified statement of that which the person does not know to be true in violation of Nevada Revised Statutes and Penal Codes.

H. Plaintiff is informed and believe, and based on such information and belief, avers that the assignment of the Note and Deed of Trust (hereinafter "ADOT1"), was recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 20090408-0002148 is in direct conflict with "Note", furthermore as Plaintiffs are in fact party to the "Note" they assert standing to challenge the assignment of the Note and Deed of Trust (hereinafter "ADOT1"), was recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 20090408-0002148, as it is in direct conflict with "Note".

I. Plaintiff is informed and believe, and based on such information and belief, avers that the assignment of the Note and Deed of Trust (hereinafter "ADOT2"), was recorded in the Clark County Recorder's Office on November 5, 2012 as Instrument No. 20121105-0000603 is in direct conflict with "Note", furthermore as Plaintiffs are in fact party to the "Note" they assert standing to challenge the assignment of the Note and Deed of Trust (hereinafter "ADOT2"), was recorded in the Clark County Recorder's Office on November 5, 2012 as Instrument No. 20121105-0000603, as it is in direct conflict with "Note".

J. Plaintiff further asserts that this case is riddled with controversy as Swiss Cheese is riddled with holes.

FIRST AMENDED COMPLAINT

4

4.   At its foundation this case is a matter of fraud, deceit and prejudice.  A fraudulent document was used to facilitate a fraudulent transaction. This transaction prejudices the Plaintiff regardless of if it is ruled to be valid or void. If the transaction is valid then Defendants have committed Securities Fraud and Tax Evasion. Though Plaintiff cannot personally prosecute Defendants for these crimes, by virtue of the Plaintiff bringing these crimes to the attention of the Securities Exchange Commission and the Internal Revenue Service, entitle Plaintiff to be the recipient of potentially millions of dollars for being a whistleblower.

5.   If the transaction is void then Defendants have committed fraud against the Plaintiff. This is not a matter of possibly committed crimes, it's a matter of absolutely committed crimes requiring Declaratory Relief to determine if the crimes have been against the Plaintiff, the Public or both. Assignments of "Deed of Trust" were recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 20090408-0002148 "ADOT1" and on November 5, 2012 as Instrument No. 20121105-0000603 "ADOT2". Plaintiff asserts that these Assignments are fraudulent documents and Plaintiff has uncovered over twenty other examples of the Defendants having committed identical crimes against similarly situated individuals. These other examples show a pattern and practice of Securities Fraud and Tax Evasion.

6.   Failing to provide a Declaratory Order determining the validity of the Assignments of "Deed of Trust" were recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 20090408-0002148 "ADOT1" and on November 5, 2012 as Instrument No. 20121105-0000603 "ADOT2" not only prejudices the Plaintiff but also prejudices the Defendants. Lacking a Declaratory Order on the validity of the Assignments of Deed of Trust Plaintiff intends to become a whistleblower bringing these crimes to the attention of the Securities Exchange Commission and the Internal Revenue Service.

7.   Lacking a Declaratory Order determining the validity of the aforementioned Assignments of "Deed of Trust" recorded in the Clark County Recorder's as Instrument No. 20090408-0002148 and Instrument No. 20121105-0000603, Defendants could lose the instant case and still be liable for potentially hundreds of millions of dollars in fines and penalties.

FIRST AMENDED COMPLAINT

8. This matter is something that should be very simple to see and its remedy well settled as a matter of law. The assignment of Plaintiff's Deed of Trust is prima facie evidence of absolute fraud and a fraudulent transaction. If the assignment is void, Defendants have committed fraud, misrepresentation and engage in unfair and deceptive business practices in an unlawful and statutorily defective foreclosure. If the assignment is valid then the Defendants have committed fraud, misrepresentation and engage in tax evasion.

9. Declaratory relief to determine the validity of the assignment is not just appropriate it is mandatory. Billions and billions of dollars have been spent to avoid this question getting answered. If the assignment is void, Defendants have no authority to negotiate a loan modification, receive payment from Plaintiff, or engage in any attempt to collect or foreclose upon Plaintiff's property and as such have harmed the Plaintiff. If the assignment is valid then the Defendants have harmed the Plaintiff law and all other abiding tax payers and Plaintiff would eligible to receive monies for turning Defendants into the IRS and SEC having committed tax evasion and securities fraud.

## NATURE AND SUMMARY OF THE ACTION

10. Plaintiff is informed and believes, and based on such information and belief, avers that at its core this case involves a series of violations that Defendants have committed in conflict with that of Internal Revenue Codes, Securities and Exchange Commission Statutes, Uniform Commercial Code, and Nevada Revised Statutes, all of which are matters of public policy and do not require special standing to assert. Plaintiff asserts that the Defendants' violations of the aforementioned public policies are deceptive, fraudulent, and possibly felonious.

11. Plaintiff is informed and believes, and based on such information and belief, avers that the alleged deceptive, fraudulent, and possibly felonious acts set forth herein were performed by the Defendants to circumvent Nevada Revised Statutes and create an unfair business advantage over the Plaintiff.

FIRST AMENDED COMPLAINT

6

12. Plaintiff is informed and believes, and based on such information and belief, avers that genuine controversies exist as to whether or not that the purported transfer of Plaintiff's Promissory Note and/or the assignment of the corresponding Deed of Trust were in direct conflict with Public Policy and as such created multiple taxable events that Plaintiff asserts have never be paid.

13. Plaintiff is informed and believes, and based on such information and belief, avers that genuine controversies also exist as to whether or not that the purported transfer of Plaintiff's Promissory Note and/or the assignment of the corresponding Deed of Trust were in direct conflict with Public Policy and law rendering the Transfer and/or Assignment void as a matter of law and as such clouded the title to Plaintiff's property and impaired his ability to identify and negotiate with the true and correct beneficiary of his loan.

14. Although Plaintiff will diligently attempt to state the facts of this case in an abbreviated manner as is customary in a complaint, the complexity and diversity of the rules and statutes of the involved Internal Revenue Codes, Securities and Exchange Commission Statutes, Uniform Commercial Code, and Nevada Revised Statutes, all residing under the umbrella of the securitization process renders brevity difficult. Each of these bodies contain specialized laws with their own unique terms, nomenclature, and vocabulary which require specificity to establish the undisputed facts so that the application of law may be applied to this case in the most expeditious manner.

15. Plaintiff is informed and believes, and based on such information and belief, avers that the Deed of Trust that Plaintiff signed as a security instrument of Plaintiff's Note states that "Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record." and as such Plaintiff asserts that he is contractually required to defend the title to the Property from the Defendants as Plaintiff is informed and believes, and based on such information and belief, avers that the Defendants' alleged violations of the aforementioned

public policies and recordation of false documents attempt to erroneously encumber   title to Plaintiff's Property that he is contractually required to defend.

16.   Plaintiff is informed and believes, and based on such information and belief, avers that Defendant, U.S. Bank National Association (hereinafter "USBANK"), is a Trustee for over one thousand residential mortgage-backed securities (hereinafter "RMBS") trusts originally securitized by more than $1 trillion dollars of residential mortgage loans, including the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 (hereinafter "MASTR"). Defendant USBANK, as Trustee, is the sole gatekeeper for the protection of the Trusts and their beneficial Certificateholders and must at all times, in addition to acting in the best interests of the Trusts, adhere to all statutes and relevant laws pertaining to the pooling and servicing of those loans securitized into the Trusts for which they are Trustee.

17.   Plaintiff is informed and believes, and based on such information and belief, avers that the Securities and Exchange Commission (hereinafter "SEC"); the U.S. Internal Revenue Code (hereinafter "IRC"); and New York Estate Powers and Trust Law (hereinafter "NY EPTL") govern the pooling and servicing of those loans securitized into the MASTR. Though the formation, pooling and servicing of the loans to be included into the MASTR is detailed in the Trust's Prospectus, adherence to the statutes and laws of the SEC, IRC, and NY EPTL are a matter of **Public Policy** and statutory law for which both the MASTR Trust and Defendant USBANK must conform.

18.   As alleged herein, Plaintiff is informed and believes, and based on such information and belief, avers that Defendant USBANK wholly failed to discharge its duties and obligations to protect the Trusts and comply with public policy and statutory law. Instead, to protect its own business interests, USBANK ignored pervasive and systemic deficiencies in the underlying loan pools and the servicing of those loans and unreasonably refused to take any action. In addition to causing

FIRST AMENDED COMPLAINT

8

billions of dollars in damages to the Trusts for which Defendant USBANK is the Trustee, collateral damage and prejudice to borrowers have occurred as a result of Defendant USBANK's abdication of responsibility.

19.  Plaintiff executed a promissory note (hereinafter "Note") in favor of Novelle Financial Services (hereinafter "Novelle Financial Services") secured by a Deed of Trust (hereinafter "Deed of Trust") for the finance of the real property located at 1100 Warm Canyon Way, Las Vegas, Nevada 89123. Subsequently, Defendants attempted but failed to assign or transfer Plaintiff's Note to MASTR. As such, Defendants have no authority to collect on the Note and enforce the Deed of Trust. Despite Defendants' failure to perfect a security interest, Defendants and their agents have collected and attempted to collect on this Note and enforce the Deed of Trust with the knowledge that they have no legal right to do so. In addition to violating the Fair Debt collection Practices Act (hereinafter "FDCPA"), the Truth in Lending Act (hereinafter "TILA") and the Consent Judgment commonly known as the "National Mortgage Settlement", Defendants knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents in the Clark County Recorder's Office. Defendants' conduct is not only unfair and fraudulent, but also constitutes a violation of New York Penal Code § 187 et seq. Through this action, Plaintiff seeks damages resulting from Defendants' unlawful conduct and a declaratory judgment establishing that Defendants have failed to substantiate a perfected security interest in the Note and Deed of Trust (collectively hereinafter "Loan"). Simply put, Defendants have no real, equitable, or pecuniary interest in the Note and Deed of Trust.

20.  Additionally, if the Court finds that any of the Defendants, including Defendant USBANK, as Trustee for MASTR have an enforceable security interest by virtue of the assignments of the Note and Deed of Trust, recorded in the Clark County Recorder's Office as Instrument Numbers 200904080002148 and 201211050000603, Plaintiff is informed and believes, and based on such information and belief, maintains that Defendants violated the tax status of the REMIC statute set

FIRST AMENDED COMPLAINT

forth in the IRC.  As such, Defendants have failed to pay taxes in an amount on information and belief in excess of $100 million dollars, and Plaintiff is a third party beneficiary as a whistleblower pursuant to 26 U.S.C. § 7801 (1982 as amended) for the purpose of reporting potential violations of Internal Revenue laws.

21.  Additionally, if the Court finds that any of the Defendants, including Defendant USBANK as Trustee for MASTR, have an enforceable security interest by virtue of the assignments of the Note and Deed of Trust recorded in the Clark County Recorder's Office as Instrument Numbers 200904080002148 and 201211050000603, Plaintiff is informed and believes, and based on such information and belief, maintains that Defendants have made material misrepresentations as to the value of the Trust and certificates issued thereunder to its investors and Certificateholders and have violated SEC laws including, among others, § 10b et. seq.  As such, Plaintiff is a third party beneficiary (whistleblower) pursuant to SEC laws and the Dodd Frank Whistle Blower Program for the purpose of reporting such violations.

## JURISDICTION AND VENUE

22.  This Court has original jurisdiction over the claims in this action based on 28 U.S.C. §§ 1331, 1343, 15 U.S.C. § 1692, 15 U.S.C. § 1641, 12 U.S.C. § 2605 and 42 U.S.C. § 1983 which confers original jurisdiction on federal district courts in suits to address the deprivation of rights secured by federal law.

23.  This Court has original jurisdiction over the claims in this action based on 18 U.S.C. §§1964-et seq., §§1962 (a-d); See also 17 CFR 10(b)-5.

FIRST AMENDED COMPLAINT

10

24. This Court also has supplemental jurisdiction over the pendant state law claims because they form a part of the same case or controversy under Article III of the United States Constitution, pursuant to 28 U.S.C. § 1367.

25. This Court has original jurisdiction over the claims in this action based on 28 U.S.C. § 1332 which confers original jurisdiction on federal district courts in suits between diverse citizens that involve an amount in controversy in excess of $75,000.

26. The unlawful conduct, illegal practices, and acts complained of and alleged in this Complaint were all committed in the Southern District of New York and involved business and a Trust located in the Southern District of New York. Therefore, venue properly lies in this District, pursuant to 28 U.S.C. § 1391(b).

27. This Court has original jurisdiction over the claims in this action based on and/or in connection to Revised regulations and Title 26 §§860(A-G) et., seq.

28. This Court has original jurisdiction over the claims in this action based on federal questions pursuant to and governed under the Securities Act of 1933 [as amended through P.L. 112-106, approved April 5, 2012].

## **THE PARTIES**

29. Plaintiff is now, and at all times mentioned herein, an individual residing in the Clark County, in the State of Nevada. At all times relevant to this action, Plaintiff has owned the real property commonly known as 1100 Warm Canyon Way, Las Vegas, Nevada 89123 (hereinafter the "Property").

FIRST AMENDED COMPLAINT

30.  Plaintiff is informed and believes, and based on such information and belief, asserts that at all relevant times to this Complaint, Defendant U.S. Bank National Association (hereinafter "USBANK") as Trustee for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1, is based in St. Paul, Minnesota with corporate headquarters located at 60 Livingston Avenue, St. Paul, Minnesota 55107-2292.

31.  Plaintiff is informed and believes, and based on such information and belief, asserts that at all relevant times to this Complaint, Defendant MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 (hereinafter "MASTR") is a common law trust formed under the laws of the state of New York as evidenced by declarations made by and recorded for public record with the Securities Exchange Commission and is administered by Defendant USBANK, is based in St. Paul, Minnesota with corporate headquarters located at 60 Livingston Avenue, St. Paul, Minnesota 55107-2292.

32.  Plaintiff is unaware of the true names and capacities of Defendant Certificateholders of the MASTR. However, Plaintiff is informed and believes, and based on such information and belief, asserts that at all relevant times to this Complaint, the true names and capacities of Defendant Certificateholders of the MASTR are exclusively known by Defendant USBANK, and is based in St. Paul, Minnesota with corporate headquarters located at 60 Livingston Avenue, St. Paul, Minnesota 55107-2292.

33.  Plaintiff is informed and believes, and based on such information and belief, asserts that at all relevant times to this Complaint, Defendant Mortgage Asset Securitization Transactions, Inc. (hereinafter "MASTI") as Depositor for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1, is based in New York, New York with corporate headquarters located at 1285 Avenue of the Americas, New York, New York 10019.

FIRST AMENDED COMPLAINT

12

34.   Plaintiff is ignorant of the true identity and capacity of Defendants designated as Roes 1-10 and Does 1-10, inclusive, representing a class of unknown persons who claim or have the right to claim an interest in certain real property located in Las Vegas, Nevada but will amend the Complaint when their identities have been ascertained according to proof within the time permitted. However, Plaintiff alleges on information and belief, that each and every Doe Defendant is in some manner responsible for the acts and conduct of the other Defendants, and were, and are, responsible for the injuries, damages and harm incurred by Plaintiff. Plaintiff further alleges on information and belief that each such designated Defendant acted, and acts, as the authorized agent, representative and associate of the other Defendants in doing the things alleged herein.

35.   Whenever reference is made in this Complaint to any act of any Defendant(s), that allegation shall mean that each Defendant acted individually and jointly with the other Defendants.

36.   Any allegation about acts of any corporate or other business Defendant(s) means that the corporation or other business performed the acts alleged through its officers, directors, employees, agents and/or representatives while they were acting within the actual or ostensible scope of their authority.

37.   Plaintiff is informed and believes, and based on such information and belief, avers that at all relevant times, each Defendant committed the acts, caused or directed others to commit the acts, or permitted others to commit the acts alleged in this Complaint. Additionally, some or all of the Defendants acted as the agent of the other Defendants, and all of the Defendants acted within the scope of their agency if acting as an agent of the other.

38.   Plaintiff is informed and believes, and based on such information and belief, avers that at all relevant times, each Defendant knew or realized that the other Defendants were engaging in or planned to engage in the violations of law alleged in this Complaint. Knowing or realizing that the

FIRST AMENDED COMPLAINT

13

other Defendants were engaging in or planning to engage in unlawful conduct, each Defendant nevertheless facilitated the commission of those unlawful acts. Each Defendant intended to and did encourage, facilitate, or assist in the commission of the unlawful acts, and thereby aided and abetted the other Defendants in the unlawful conduct.

## <u>OVERVIEW</u>

39. Plaintiff is informed and believes, and based on such information and belief, avers that Defendants have falsified documents and have unlawfully attempted transfers, assignments and endorsements of the Note and Deed of Trust to which the Defendants claim the beneficial rights and interests. As discussed below, the Defendants' claimed interest is false.

40. Plaintiff executed a Note in favor of Novelle Financial Services secured by a Deed of Trust, executed on November 24, 2004 and recorded in the Clark County Recorder's Office on January 3, 2005 as Instrument No. 20050103-0003144 for the finance of the Property.

41. Plaintiff is informed and believes, and based on such information and belief, avers that an assignment of the Note and Deed of Trust (hereinafter "ADOT1"), was recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 20090408-0002148. A certified copy of the ADOT was requested from the Clark County Recorder's Office.

42. Plaintiff is informed and believes, and based on such information and belief, avers that the ADOT1 purports to "….**GRANT, ASSIGN AND TRANSFER TO:** U.S. Bank National Association, as Trustee. (Emphasis added)

///
///
///

FIRST AMENDED COMPLAINT

14

43.   Plaintiff is informed and believes, and based on such information and belief, avers that the ADOT1 purports to transfer the subject Deed of Trust "together with the Promissory Note secured by said Deed of Trust..."

44.   Plaintiff is informed and believes, and based on such information and belief, avers that the ADOT1 purports to have been executed on September 22, 2008 as evidenced by the document stating "DATE: September 22, 2008.

45.   Plaintiff is informed and believes, and based on such information and belief, avers that the ADOT1 purports to have been notarized over six months later on April 1, 2009.

46.   Plaintiff is informed and believes, and based on such information and belief, avers that the ADOT1 purports to have then been recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 20090408-0002148.

47.   Plaintiff is informed and believes, and based on such information and belief, avers that the ADOT1 purports to "....**GRANT, ASSIGN AND TRANSFER TO:** U.S. Bank National Association, as Trustee and specifically makes said transfer directly from Novell to Defendant USBANK and not to Defendant MASTI. (Emphasis added)

48.   Plaintiff is informed and believes, and based on such information and belief, avers that any language in ADOT1 which claimed to assign the note could not do so, as notes do not move through assignments in the land records.

49.   Plaintiff is informed and believes, and based on such information and belief, avers that Defendant MASTI was never transferred the Plaintiff's Note and Deed and therefore never could have

FIRST AMENDED COMPLAINT

15

deposited them into the Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 Trust.

50. Plaintiff is informed and believes, and based on such information and belief, avers that an assignment of the Note and Deed of Trust (hereinafter "ADOT2"), was recorded in the Clark County Recorder's Office on November 5, 2012 as Instrument No. 20121105-0000603. A certified copy of the ADOT2 was requested from the Clark County Recorder's Office.

51. Plaintiff is informed and believes, and based on such information and belief, avers that the ADOT2 purports to "….**GRANT, ASSIGN AND TRANSFER**… to: U.S. Bank National Association, AS TRUSTEE FOR MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1. (Emphasis added)

52. Plaintiff is informed and believes, and based on such information and belief, avers that the ADOT2 purports to have been executed on October 19, 2012 as evidenced by the document stating "Dated on 10/19/2012".

53. Plaintiff is informed and believes, and based on such information and belief, avers that Mortgage Asset Securitization Transactions, Inc. is the "Depositor" of record for the MASTR Trust as evidenced by declarations made by and recorded for public record with the Securities Exchange Commission.

54. Plaintiff is informed and believes, and based on such information and belief, avers that Mortgage Asset Securitization Transactions, Inc. never was transferred the Plaintiff's Note nor assigned the Plaintiff's Deed of Trust, and as such Mortgage Asset Securitization Transactions, Inc.'s ability to have deposited Plaintiff's loan (Note and Deed of Trust) into the MASTR Trust is a factual impossibility.

FIRST AMENDED COMPLAINT

16

55. Plaintiff is informed and believes, and based on such information and belief, alleges Defendants directly or indirectly through agents authorized or unauthorized are prejudicing Plaintiff in the following areas but not limited to:

    a) Impairing Plaintiff's ability to negotiate a loan modification with the true and correct beneficiary of Plaintiff's loan.

    b) Impairing Plaintiff's ability to negotiate a short sale with the true and correct beneficiary of Plaintiff's loan.

    c) Impairing Plaintiff's ability to obtain new financing.

    d) Impairing Plaintiff's ability to provide a clear and correct title to a potential buyer of Plaintiff's home.

    e) Most importantly, Plaintiff avers that the ADOT, as MASTR is not the true and correct beneficiary of Plaintiff's loan, and exposes him to multiple judgments and/or demands for payment on Plaintiff's loan.

56. Plaintiff is informed and believes, and based on such information and belief, avers that the following facts pertaining to REMIC Trusts are Public Policy and governed by 26 U.S.C. §§ 860A-860G and that the following should be judicially noticed:

    a) The "Closing Date" of the Trust is the "Startup Date" for the REMIC status of the Trust as defined by 26 U.S.C. §§ 860A-860G.

FIRST AMENDED COMPLAINT

b) That 26 U.S.C. §§ 860A-860G requires the asset to be purchased by the Trust within the 3-month period beginning on the startup date of the Trust.

c) That the 3-month period beginning on the startup date of the Trust ended on or about July 29, 2005 pursuant to 26 U.S.C. §§ 860A-860G.

d) That 26 U.S.C. §§ 860A-860G requires an asset that is to be purchased by a REMIC Trust to be "Bankruptcy Remote" via two "True Sale" transactions in between the loan originator and the Trust.

e) That 26 U.S.C. §§ 860A-860G requires an asset that is to be purchased by a REMIC Trust must be a "Qualified Loan".

f) That 26 U.S.C. §§ 860A-860G requires an asset that is to be purchased by a REMIC Trust must not be a "Defective Obligation".

g) That 26 U.S.C. §§ 860A-860G requires an asset that is to be purchased by a REMIC Trust must be a "True Sale".

h) That 26 U.S.C. §§ 860A-860G requires an asset that is to be purchased by a REMIC Trust must have a Value-To-Loan ratio of 80% or higher.

57. Plaintiff is informed and believes, and based on such information and belief, avers that aforementioned information (items a-h) pertaining to REMIC Trusts, though possibly referenced in the Prospectus, are Public Policy and governed by 26 U.S.C. §§ 860A-860G, and as such require no standing requirements for Plaintiff to assert the violations of Public Policy and 26 U.S.C. §§

FIRST AMENDED COMPLAINT

18

860A-860G of ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively.

58. Plaintiff is informed and believes, and based on such information and belief, avers that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively, are violations of Public Policy and 26 U.S.C. §§ 860A-860G for the following reasons:

a) Plaintiff is informed and believes, and based on such information and belief, avers that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively, are in direct violation of the REMIC requirements, as required by the IRC 26 U.S.C. §§ 860A-860G, as the loan must have been transferred to MASTR by July 29, 2005.

b) Plaintiff is informed and believes, and based on such information and belief, avers that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively, are in direct violation of 26 U.S.C. §§ 860A-860G's requirement that the asset to be purchased by the Trust within the 3-month period beginning on the startup date of the Trust.

c) Plaintiff is informed and believes, and based on such information and belief, avers that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively, are in direct violation of 26 U.S.C. §§ 860A-860G's timing requirement that ended on or about July 29, 2005.

d) Plaintiff is informed and believes, and based on such information and belief, avers that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively,  purport to assign Plaintiff's loan directly from Novelle Financial Services to U.S. Bank National Association as Trustee for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 in violation of 26 U.S.C. §§ 860A-

FIRST AMENDED COMPLAINT

19

860G's requirement that an asset that is to be purchased by a REMIC Trust to be "Bankruptcy Remote" via two "True Sale" transactions in between the loan originator and the Trust.

e)  Plaintiff is informed and believes, and based on such information and belief, avers that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively, violates 26 U.S.C. §§ 860A-860G requirement that an asset that is to be purchased by a REMIC Trust must be a "Qualified Loan" as Plaintiff avers that the loan was in default at the time of the that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively, and as such could not have been a "Qualified Loan".

f)  Plaintiff is informed and believes, and based on such information and belief, avers that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively, violates 26 U.S.C. §§ 860A-860G requirement that an asset that is to be purchased by a REMIC Trust must not be a "Defective Obligation" as Plaintiff avers that the loan was in default at the time of ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively.

g)  Plaintiff is informed and believes, and based on such information and belief, avers that ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603 respectively, violates 26 U.S.C. §§ 860A-860G requirement that an asset that is to be purchased by a REMIC Trust must be a "True Sale" as Plaintiff is informed and believes, and based on such information and belief, that a True Sale never took place.

59.  Plaintiff is informed and believes, and based on such information and belief, avers that these defects are incurable and render any assignments void, not merely voidable, as the violations would leave the Certificateholders exposed to massive tax consequences and the Trustee cannot cure their ultra-

FIRST AMENDED COMPLAINT

vires acts by causing the Certificateholders to incur a catastrophic taxable event as a result of Defendant USBANK's abdication of responsibility.

60.   In the event Plaintiff is precluded from asserting these issues, Plaintiff contends that by virtue of accepting the transfer and assignment of non-qualified investments (i.e., loans in default, non-performing loans and loans with below 80% Value-To-Loan ratios, loans assigned to the Trust after the Trust's closing date), Defendants have violated the tax status of the REMIC and have now subjected the entire Trust, valued at $527,872,000 to tax liabilities which, on information and belief, has not been paid. In addition to his own loan Plaintiff has discovered and identified at least twenty (20) other loans with similar defects and is therefore a whistleblower and claims rights to a percentage of benefits the IRS will ultimately receive for the Defendant's MASTR tax liabilities.

61.   Plaintiff is informed and believes, and based on such information and belief, avers that the more than twenty (20) additional Assignments of Deed of Trust or Mortgages that appear to also be Void and executed after the Closing Date of MASTR constitute a pattern and practice of non-compliance and total disregard for State, Federal and Securities Laws.

62.   Similarly, by accepting the transfer and assignment, Defendants have made material misrepresentations as to the value of the Trust and its performance to its investors/Certificateholders and have violated SEC laws, among others.  Plaintiff is therefore a whistleblower to SEC § 10b and the Dodd-Frank whistleblower program.  As such, Plaintiff is a third party beneficiary pursuant to the above laws for the purpose of reporting such violations.

///
///
///
///
///

FIRST AMENDED COMPLAINT

# **GENERAL FACTUAL ALLEGATIONS**

63. Plaintiff obtained a loan from Novelle Financial Services and in doing so Plaintiff executed a Note and Deed of Trust in favor of Novelle Financial Services, secured by the Property as part of the same transaction. Attached, hereto, is a true and correct copy of the Deed of Trust.

64. The Deed of Trust names Novelle Financial Services as the original lender.

65. On or about April 8, 2009, an ADOT1, purporting to assign ....all rights, title and interest of undersigned in and to that certain Real Estate mortgage executed by Randy Springer. The ADOT was recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 200904080002148.

66. Plaintiff is informed and believe, and based on such information and belief, avers that the Defendants will attempt to ratified the assignment of the Note and Deed of Trust (hereinafter "ADOT1"), was recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 20090408-0002148, asserting that "Even if Plaintiff had standing to challenge the Assignment, their allegations if true would only make the Assignment *voidable* and subject to ratification." Plaintiff is informed and believe, and based on such information and belief, avers that a Ratification is an admission of the following:

   1. The Assignment was executed on April 1, 2009.
   2. The Assignment was together with the Promissory Note.
   3. The transfer of Plaintiff's loan occurred on April 1, 2009.
   4. The transfer of Plaintiff's loan on April 1, 2009 identified as Instrument No. 20090408-0002148 was to U.S. Bank National Association and makes no reference to the MASTR

FIRST AMENDED COMPLAINT

Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1.

5. If the transfer of Plaintiff's loan on April 1, 2009 identified as Instrument No. 20090408-0002148 was to the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 was more than 1,342 days after July 29, 2005, the date proclaimed by the Prospectus filed with SEC.

6. If the transfer of Plaintiff's loan to the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 was more than 1,252 days after the date required by the IRS.

67. Plaintiff is informed and believe, and based on such information and belief, avers that the Defendants will attempt to ratified the assignment of the Note and Deed of Trust (hereinafter "ADOT2"), was recorded in the Clark County Recorder's Office on November 5, 2012 as Instrument No. 20121105-0000603, asserting that "Even if Plaintiff had standing to challenge the Assignment, their allegations if true would only make the Assignment *voidable* and subject to ratification." Plaintiff is informed and believe, and based on such information and belief, avers that a Ratification is an admission of the following:

1. The Assignment was executed on October 19, 2012.

2. The Assignment was together with the Promissory Note.

3. The transfer of Plaintiff's loan occurred on October 19, 2012.

4. The transfer of Plaintiff's loan on November 5, 2012 as Instrument No. 20121105-0000603 was from U.S. Bank National Association as Trustee for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 to U.S. Bank National Association as Trustee for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1.

FIRST AMENDED COMPLAINT

23

5. If the transfer of Plaintiff's loan took place on November 5, 2012 as indicated by Instrument No. 20121105-0000603 it was from U.S. Bank National Association as Trustee for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 and it was more than 2,656 days after July 29, 2005, the date proclaimed by the Prospectus filed with SEC.

6. If the transfer of Plaintiff's loan took place on November 5, 2012 as indicated by Instrument No. 20121105-0000603 it was from U.S. Bank National Association as Trustee for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass Through Certificates, Series 2005-HE1 and it was more than 2,566 days after the date required by the IRS.

68. Plaintiff alleges that despite not holding any interest in Plaintiff's home, a Notice of Default was filed indicating that it was executed by the original Trustee, duly appointed Trustee or acting as Agent for the Trustee or beneficiary. The Notice of Default indicated that the beneficiary was Defendant USBANK, as Trustee for Defendant MASTR.

69. Plaintiff is informed and believes, and based on such information and belief, avers none of the Defendants have any real, equitable, or pecuniary interest in the Note and Deed of Trust. As such, Plaintiff asserts that they have a real and true conflict as to whom is the true and correct beneficiary, and who has the power to negotiate and authorize a loan modification without exposing him to multiple judgments and/or demands for payment.

70. Plaintiff avers that he is as a matter of fact a party to the "Deed of Trust" referenced in passim in the instant complaint.

71. Plaintiff avers that he is as a matter of fact a party to the "Note referenced in passim in the instant complaint.

FIRST AMENDED COMPLAINT

72. Plaintiff avers that the "Deed of Trust" and the "Note" state that Plaintiff is not merely a Party having standing, but a Party required to defend title to the subject property.

   "BORROWER COVENANTS that Borrower is lawfully seized of the estate hereby conveyed and has the right to grant and convey the Property and that the Property is unencumbered. except for encumbrances of record. *Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to any encumbrances of record."*
   *(emphasis added)*

73. Plaintiff is informed and believes, and based on such information and belief, avers that the "Note's" endorsements are in direct conflict with the Assignments of "Deed of Trust" recorded in the Clark County Recorder's as Instrument No. 20090408-0002148 and Instrument No. 20121105-0000603.

74. Plaintiff is informed and believes, and based on such information and belief, that the Defendants do not own Plaintiff's debt because one or more of the assignments of his debt are void.

75. Plaintiff is informed and believes, and based on such information and belief, that while Plaintiff owes a debt to someone, he does not owe it to the any of the Defendants.

76. Plaintiff is informed and believes, and based on such information and belief, that a homeowner is entitled to bring such a claim, just as he may protect himself against the wrongful invasion of his property interests in any other context.

77. Plaintiff is informed and believes, and based on such information and belief, that Nevada's non-judicial foreclosure statutes are designed to carefully balance creditors' rights to an efficient remedy for default against homeowners' rights against unlawful foreclosures.

FIRST AMENDED COMPLAINT

78.   Plaintiff is informed and believes, and based on such information and belief, that one of the basic tenets of foreclosure law is that the foreclosing party must have an ownership interest in the debt securing the home that is to be foreclosed upon, to that end, Plaintiff is informed and believes, and based on such information and belief, that a party demanding payment from a homeowner must have an ownership interest in the debt, or be an agent of the party having an ownership interest in the debt. And that there is no reason to depart from this fundamental premise where foreclosure proceeds non-judicially.

79.   Plaintiff is informed and believes, and based on such information and belief, that whether the correct party is foreclosing is not a technicality, to that end, Plaintiff is informed and believes, and based on such information and belief, that a party demanding payment from a homeowner must have an ownership interest in the debt, or be an agent of the party having an ownership interest in the debt.

80.   Plaintiff is informed and believes, and based on such information and belief, that a homeowner experiences real harm when a party with no interest in the debt forecloses because the homeowner has lost his home to the wrong party and is deprived of the opportunity to explore options with the true debt owner.

81.   Plaintiff is informed and believes, and based on such information and belief, that Recognizing wrongful foreclosure actions to challenge foreclosures by the wrong party, such as those resulting from allegedly void debt assignments, is sound policy because it empowers homeowners to protect themselves against "fast and loose" foreclosure practices, incentivizes the mortgage industry to exercise due diligence in the foreclosure process, and helps avoid the confusion and unfairness that would result from more than one party having the power to foreclose. A contrary rule would lead to a legally untenable situation, i.e. that anyone can foreclose on a homeowner because someone has the right to foreclose.

///

///

///

FIRST AMENDED COMPLAINT

# SECURITIZATION

82. Securitization is a financing method whereby loans are made by loan originators, and the notes evidencing the debt are sold to a series of parties, the last of which is generally a Securitization Trust. The Trust pays for the notes with the proceeds of bonds or bond like instruments issued by the Trust. The notes themselves are typically owned by the Trust, for the benefit of investors, who are sometimes called Certificateholders. The Investors are entitled to payment from the proceeds of the note repayments. Since the bonds are secured by the proceeds of the notes, the bonds are known as "mortgage backed" securities.

83. The MASTR Trust is a New York Trust formed to act as a Real Estate Mortgage Investment Conduit, or "REMIC". In order for a Mortgage Backed Securities Trust ("MBS") to qualify for the federal tax REMIC status, one of the many very specific rules that must be followed is that trust assets must be "Bankruptcy Remote". Issuers of the REMIC Trusts have signed themselves up under oath with the SEC and the IRS as mortgage pass-through assets, qualifying as REMICs rather than an ordinary Real Estate Investment Trust ("REIT"). As long as the MBS is a qualified REMIC, no income tax will be charged to the MBS. REMICS were newly invented in 1987 as a tax minimizing measure by Investment Banks. When filing as a REMIC, MBS's are forbidden from engaging in any prohibited action that would jeopardize the REMIC tax status as the penalty would result in a one hundred percent (100%) taxation by the IRS.

84. Most importantly, an assignment of the "Note" to the "Trust" after the closing date is a "Prohibited Transaction" which jeopardizes the favorable tax status accorded a "REMIC". This transaction would be in contradiction to the TRUST Laws" and is therefore "VOID".

85. Taxation on contributions after startup are governed by 26 U.S.C. §§ 860G(d)(1) which states:

FIRST AMENDED COMPLAINT

**"Except as provided in paragraph (2), if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution."**

86. Taxation on "Prohibited Transactions" are governed by 26 U.S.C. §§ 860F(a)(1) which states:

**"There is hereby imposed for each taxable year of a REMIC a tax equal to 100 percent of the net income derived from prohibited transactions."**

87. Pursuant to the IRC, REMICs are treated as pass-through vehicles for tax purposes and enjoy tax-free exemptions and bankruptcy remote protection. Generally, non-compliance with REMIC requirements subjects a REMIC to loss of its tax-free status and bankruptcy-remote privileges. The PROSPECTUS, together with applicable New York Trust Law, forbid and void any action which might jeopardize the tax status of any REMIC and/or impose any tax upon the Trust for prohibited contributions of transactions. A copy of the PROSPECTUS was filed under oath with the SEC and is available online at: http://www.sec.gov/Archives/edgar/data/1325405/000088237705001375/d326316-a.txt   Section 11.04 of the PROSPECTUS provides in relevant part: "....This Agreement shall be construed in accordance with the laws of the State of New York and the obligations, rights and remedies of the parties hereunder shall be determined in accordance with such laws.."

88. Plaintiff's initial investigation has confirmed that the Defendants were involved in an attempt to securitize the mortgage. These parties likely intended to assign and transfer the mortgage into the MASTR Trust. Plaintiff is informed and believes, and based on such information and belief, alleges that the void assignment and the attempted transfer to securitize the mortgage failed to comply with statutory law, the PROSPECTUS for the Trust, or applicable state and federal law. Plaintiff further alleges the mortgage was not properly securitized and that his Note and Deed was never assigned and transferred to the MASTR. Based on either scenario, Defendants have no right or beneficial

FIRST AMENDED COMPLAINT

interest in the collateral and have improperly and fraudulently utilized the foreclosure statutes against Plaintiff and as such created an unfair business advantage over Plaintiff.

89.  Typically, the owners of the mortgage backed securities are investors in large investment pools comprised of pension funds, insurance companies and sovereign wealth funds.

90.  The mortgage payments for the Plaintiff's Loan are not collected by the loan owners themselves. Rather, the tasks of payment processing, escrow maintenance, loss mitigation and instituting and managing foreclosure are collectively known as "servicing".

91.  When the servicers collect loan payments from the borrowers, the servicers transfer those payments to the Trustee of the Trust ("Trustee"), which then distributes the payments to the Trust's beneficiaries, i.e., the Investors.  Therefore, each Trust is primarily administered by two entities: the Trustee, who is the "face" of each Trust with the Investors, and the Servicer (sometimes called a master Servicer), who is the "face" of each Trust with the borrowers.  Because a Trustee holds the Trust corpus for the beneficiaries, a servicer will act in the name of the Trustee when taking action against borrowers, which includes the servicers in the name of a Trustee bringing foreclosure actions against a borrower who is allegedly delinquent on his loan payments.

92.  Plaintiff alleges that his Deed of Trust was not assigned, transferred, or granted to the MASTR as required by the Trust Agreement, statutory law, or applicable state and federal law, including but limited to the SEC and IRC. Plaintiff is informed and believes, and based on such information and belief, asserts that Defendants' failure to adhere to all statutes and relevant laws pertaining to the pooling and servicing of those loans securitized into the MASTR is a matter of public policy and common law.

FIRST AMENDED COMPLAINT

93. Plaintiff alleges that his Deed of Trust was not properly assigned to the MASTR, as set forth in the Trust Agreement as well as statutes and relevant laws.

94. In further violation of Section 2.01 of the Trust Agreement, Defendants failed to deposit specific documents with the Custodian of Records to complete the assignment and transfer of Plaintiff's Note and Deed to the MASTR.

95. Under New York Trust Law, an asset does not become trust property until the asset is delivered to the Trustee. ("It has long been the law in New York that to subject an asset to the terms of a trust that has an independent Trustee..., a grantor must have the intent to make a present gift to the trust and must make sufficient delivery of the assets of the trust to the Trustee.")  Warren's Heaton on Surrogate's Court Practice 13 App. 4-46 (Linda B. Hirschson et al. eds., 7th ed. 2006).  Moreover, NY Estates, Powers and Trusts Law § 7-2.4 states: "If the trust is expressed in the instrument creating the estate of the Trustee, every sale, conveyance or other act of the Trustee in contravention of the trust, except as authorized by this article and by any other provision of law is void." (Emphasis added)

96. On information and belief Plaintiff alleges that Defendants failed to follow the required securitization process set forth in 26 U.S.C. §§ 860 - 860G.  Plaintiff further alleges that the failure to follow the specific transfer and assignment requirements of the PROSPECTUS are fatal to Defendant USBANK's claim to own the Note.  Plaintiff further alleges that under applicable New York Trust Law, this defect may not now be remedied and may never be remedied in the future.

97. The issue of defective assignments in the securitization process has been the focus of state and federal court case decisions, Attorneys General investigations, and Congressional reports.  On each level, state and federal entities have concluded that a failure in the securitization process results in

FIRST AMENDED COMPLAINT

a break in the chain of title and the inability of the Securitized Trust to enforce the Note and Deed of Trust.

98.   Attorney General of Nevada, Catherine Cortez Masto, and Attorney General of California, Kamala Harris, have recently agreed to launch a joint investigation of residential mortgage foreclosure practices, including failed securitizations.  Attorney General Masto has filed a complaint against Bank of America in United States District Court in Reno, in which her office alleges:

"Bank of America misrepresented both in communications with Nevada consumers and in documents they recorded and filed, that they had authority to foreclose upon consumers' homes as servicer for the trusts that held these mortgages.  Defendants knew (and were on notice) that they had never properly transferred [text redacted] these mortgages to those trusts, failing to deliver properly endorsed or assigned mortgage notes as required by the relevant legal contracts and state law.  Because the trusts never became holders of these mortgages, Defendants lacked authority to collect or foreclose on her behalf and never should have represented they could."

99.   Congress has recognized the importance of the Trust's strict compliance with the PROSPECTUS and New York Trust Law.  Specifically, the congressional Oversight Panel, in its November 16, 2010 Oversight Report Examining the Consequences of Mortgage Irregularities for Financial Stability and Foreclosure Mitigation determined "[I]f the transfer for the notes and mortgages did not comply with the PROSPECTUS, the transfer would be void, and the assets would not have been transferred to the trust."

100.  Plaintiff is informed and believes, and based on such information and belief, avers that the ultra-vires acts alleged herein can be ratified with an "Opinion Letter of Counsel" stating that the MASTR Trust's acceptance of Plaintiff's loan on September 19, 2012 is not a violation of any SEC, IRC, or NY EPTL. Plaintiff further asserts that lacking the aforementioned Opinion Letter rendering the

FIRST AMENDED COMPLAINT

31

ADOT2 voidable, the ADOT2, executed on September 19, 2012 and subsequently recorded in the Clark County Recorder's Office on November 5, 2012 as Instrument No. 20121105-0000603 is in fact **VOID**.

## DEFECTIVE FORECLOSURE

101.  Nevada non-judicial foreclosure law requires the Trustee of the beneficiary or their authorized agents to follow certain procedures in order to enforce a power of sale clause in a Deed of Trust. See Nevada Revised Statutes § 107.  A foreclosing party must strictly comply with the statutory requirements, otherwise the sale is invalid.

102.  In Nevada, the Deed of Trust follows the Note.  Hence, an assignment or transfer of the Note carries with it the Deed of Trust.  See Nevada Revised Statutes § 107.

103.  As such, in Nevada, a Deed of Trust can only be foreclosed by the <u>owner</u> of the Note.

104.  The Supreme Court of The State of Nevada in the matter of Leyva v. National Default Servicing Corp. (127 Nev. Adv. Op. No. 40 July 7, 2011) stated **"...obligor on the note has the right to know the identity of the entity that is "entitled to enforce" the mortgage note under Article 3**, see NRS 104.3301". **(emphasis added).**

In the matter of Leyva v. National Default Servicing Corp. (127 Nev. Adv. Op. No. 40 July 7, 2011) the Supreme Court of the State of Nevada understood that foreclosures, foreclosure mediation and foreclosure litigation were most likely going to increase and that even though the matter of Leyva v. National Default Servicing Corp. (127 Nev. Adv. Op. No. 40 July 7, 2011) primarily dealt with nuances pertaining to the Nevada Foreclosure Mediation Program, Nevada wisely felt that it was an appropriate time to address aspects of "negotiable instruments" that affect ALL mortgages.  In addressing Article 3 of the

Uniform Commercial Code the Supreme Court of the State of Nevada stated the following critical points:

1.  Mortgage note

The proper method of transferring the right to payment under a mortgage note is governed by Article 3 of the Uniform Commercial Code—Negotiable Instruments, because a mortgage note is a negotiable instrument.[6]  Birkland v. Silver State Financial Services, Inc., No. 2:10-CV-00035-KJD-LRL, 2010 WL 3419372, at *4 (D. Nev. Aug. 25, 2010). The obligor on the note has the right to know the identity of the entity that is "entitled to enforce" the mortgage note under Article 3, see NRS 104.3301, "[o]therwise, the [homeowner] may pay funds to a stranger in the case."  In re Veal, No. 09-14808, 2011 WL 2304200, at *16 (B.A.P. 9th Cir. June 10, 2011) (holding, in a bankruptcy case, that AHMSI did not prove that it was the party entitled to enforce, and receive payments from, a mortgage note because it "presented no evidence as to who possessed the original Note. It also presented no evidence showing [e]ndorsement of the note either in its favor or in favor of Wells Fargo, for whom AHMSI allegedly was servicing the [bankrupt party's] Loan.").  If the homeowner pays funds to a "stranger in the case," then his or her obligation on the note would not be reduced by the payments made. See id. at *7 ("if a[n obligor on a mortgage note] makes a payment to a 'person entitled to enforce,' the obligation is satisfied on a dollar for dollar basis, and the [obligor] never has to pay that amount again").

2.  Wells Fargo argues that, under Nevada law, possession of the original note allowed it to enforce the note. **We disagree and take this opportunity to clarify the applicability of Article 3 to mortgage notes, as we anticipate increasing participation in the Foreclosure Mediation Program, as well as a corresponding increase in the number of foreclosure appeals in this state.  As discussed below, we conclude that Article 3 clearly requires Wells Fargo to demonstrate more than mere possession of the original note to be able to enforce a negotiable instrument under the facts of this case.** (emphasis added).

FIRST AMENDED COMPLAINT

33

3.   Pursuant to NRS 104.3102(1), Article 3 applies to negotiable instruments.  Negotiable instruments are defined as an unconditional promise or order to pay a fixed amount of money, with or without interest or other charges described in the promise or order, if it:

(a)    Is payable to bearer or to order at the time it is issued or first comes into possession of a holder;

(b)    Is payable on demand or at a definite time; and

(c)    Does not state any other undertaking or instruction by the person promising or ordering payment to do any act in addition to the payment of money.

**NRS 104.3104(1).    Thus, a mortgage note is a negotiable instrument, and any negotiation of a mortgage note must be done in accordance with Article 3.** (emphasis added).

4.   **For a note in order form to be enforceable by a party other than to whom the note is originally payable, the note must be either negotiated or transferred.[7]**   A "'[n]egotiation' means a transfer of possession, whether voluntary or involuntary, of an instrument by a person other than the issuer to a person who thereby becomes its holder." NRS 104.3201(1).   "[I]f an instrument is payable to an identified person, negotiation requires transfer of possession of the instrument and its endorsement by the holder."[8] NRS 104.3201(2) (emphasis added).  An "endorsement" is a signature that is "made on an instrument for the purpose of negotiating the instrument." NRS 104.3204(1).  **Thus, if the note is payable to the order of an identifiable party, but is then sold or otherwise assigned to a new party, it must be endorsed by the party to whom it was originally payable for the note to be considered properly negotiated to the new party.**   Once a proper negotiation occurs, the new party, or "note holder," with possession is entitled to enforce the note.  NRS 104.1201(2)(u)(1) ("Holder means . . . [t]he person in possession of a negotiable instrument that is payable either to bearer or to an identified person that is the person in possession."). (emphasis added).

FIRST AMENDED COMPLAINT

34

5. **"…must account for possession of the unendorsed instrument by proving the transaction through which the transferee acquired it."** U.C.C. § 3-203 cmt. 2 (explaining the effect of § 3-203(b), codified in Nevada as NRS 104.3203(2)). In other words, because the party seeking to enforce the note cannot "prove" its right to enforce through the use of a valid endorsement, the party must "prove" by some other means that it was given possession of the note for the purpose of enforcing it.[9]" (emphasis added).

The aforementioned citations clearly show that regardless of whether or not a borrower is in the Nevada Foreclosure Mediation Program, a homeowner has the right to know the identity of the entity that is **"entitled to enforce"** the mortgage note under Article 3, see NRS 104.3301". (emphasis added)

Judge Gloria M. Navarro has stated in an ORDER in the matter KARTMAN v. OCWEN (Case No.: 2:09-cv-02404-GMN-PAL) **"this Court has repeatedly ruled, regardless of this language, MERS is not in fact a beneficiary**, but a nominee of the lender-beneficiary, i.e., a limited agent for the purpose of administering the deed of trust, for example to substitute trustees." Accordingly, Plaintiff contends that in Nevada, the power of sale cannot be exercised until one of two particular entities—the beneficiary or the trustee--or an agent thereof, records the NOD. Nev. Rev. Stat. § 107.080(2)(c). (emphasis added).

105. Plaintiff alleges that Defendants do not own the Note, have no legal authority to enforce the Note or Deed of Trust, and have no legal authority to exercise the power of sale under Nevada Revised Statutes § 107.

106. Plaintiff alleges that none of the Defendants or their agents have a beneficial interest in the property and cannot enforce the underlying debt or Deed of Trust. As such, Defendants are in violation of the Nevada Revised Statutes § 107 and any notice of default issued is void ab initio.

107. Plaintiff is informed and believes, and based on such information and belief, avers that despite this failed attempt to assign, transfer and grant Plaintiff's Deed of Trust to Defendant USBANK,

Defendants have and will continue to attempt to collect mortgage payments on Plaintiff's Loan and may attempt to commence foreclosure proceedings on behalf of an undisclosed principal.

108. Defendants attempted to cover-up their failure to properly assign, transfer, or grant Plaintiff's Deed of Trust by purportedly executing and filing a fabricated ADOT.

109. Plaintiff does not dispute that he owes money on his loan obligation. Rather, Plaintiff disputes the amount owed and seek the Court's assistance in determining who the true creditor is of the Note and Deed of Trust.

110. Plaintiff is informed and believes, and based on such information and belief, avers that in Nevada the "…when MERS is the named beneficiary and a different entity holds the promissory note, the note and the deed of trust are split, making non-judicial foreclosure by either improper." See Edelstein vs. Bank of New York Mellon, 128 Nev., Advance Opinion 48 in The Supreme Court of the State of Nevada, filed September 27, 2012.

111. Plaintiff is informed and believes, and based on such information and belief, avers that his Note and Deed of Trust have never been properly reunified.

112. Plaintiff's information and belief is based on: (i) a title report and analysis of the Property's county records; (ii) direct written and oral communication with Defendants; (iii) his counsel's research, experience and extensive review of depositions, case law, amicus briefs, correspondence, news articles, reports, complaints by Attorneys General from various states and publicly available securitization documents and practices; (iv) a review of the "Notice of Default", "Assignment of Mortgage", "Substitution of Trustee" and "Notice of Trustee Sale"; and (v) an audit of filings with the SEC, including MASTR's 424B5 Prospectus and Prospectus ("PROSPECTUS").

113. The title to Plaintiff's home has been slandered, clouded and its salability has been rendered unmarketable.

114. Plaintiff does not know who the current beneficiary of his Note and Deed of Trust actually is, such that he is now subject to multiple financial judgments.

115. Plaintiff is not required to post tender because the attack of the validity of the assignment and the amount owed on the underlying debt, are not mere technical discrepancies but render the assignment void ab initio.

## FIRST CAUSE OF ACTION

## FOR DECLARATORY RELIEF COUNT - 1: TO DETERMINE STATUS OF DEFENDANTS' CLAIMS [28 U.S.C. §§ 2201, 2202]

(against all Defendants, and Associates in Fact)

116. Plaintiff re-alleges all preceding paragraphs 1-115 and incorporates them by reference as if fully set forth herein.

117. § 2201(a) of Title 28 of the United States Code states: "[i]n a case of actual controversy within its jurisdiction…any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought. Any such declaration shall have the force and effect of a final judgment or decree and shall be reviewable as such."

///

///

///

FIRST AMENDED COMPLAINT

37

118. § 2202 of Title 28 of the United States Code states: "[f]urther necessary or proper relief based on a declaratory judgment or decree may be granted, after reasonable notice and hearing, against any adverse party whose rights have been determined by such judgment."

119. Plaintiff alleges that Defendant USBANK does not have a secured or unsecured legal, equitable, or pecuniary interest in the Plaintiff's loan evidenced by the fact that the only lien assigned by Novelle Financial Services was a non-existent mortgage and purported assignments thereafter by Defendants are void and have no value since the Deed of Trust was never transferred and is wholly unsecured.

120. On September 19, 2012, Defendants claimed they were assigned and transferred a secured enforceable interest in, and a perfected lien against the Plaintiff's Note, Deed of Trust and property.

121. Thus, the competing allegations made by Plaintiff and Defendants, above, establish that a real and actual controversy exists as to the respective rights of the parties to this matter, including ownership of the property.

122. In addition, the harm by Defendants is ongoing and includes the potential of Plaintiff's home being at risk of a statutorily defective foreclosure.  Therefore, as this claim relates to future harm, Plaintiff's declaratory relief claim is cognizable as an independent cause of action.

123. Accordingly, Plaintiff requests that the Court make a finding and issue an appropriate order stating that none of the named Defendants or Doe Defendants, have any right or interest in Plaintiff's Note, Deed of Trust, or the property which authorizes them, in fact or as a matter of law, to collect Plaintiff's mortgage payments or enforce the terms of the Note or Deed of Trust in any manner whatsoever.

FIRST AMENDED COMPLAINT

38

124. Plaintiff will suffer prejudice if the Court does not determine the rights and obligations of the parties because: (1) Plaintiff will be denied the opportunity to identify his true and current creditor/lender and negotiate with them; (2) he will be denied the right to conduct discovery and have Defendants' claims verified by a custodian of records who has personal knowledge of the loan and all transactions related to it; and (3) he will be denied the opportunity to discover the true amount still owing minus any illegal costs, fees and charges.

125. Due to the actual case and controversy regarding competing claims and allegations, it is necessary that the Court declare the actual rights and obligations of the parties and make a determination as to whether Defendants' claims against Plaintiff is enforceable and whether they are secured or unsecured by any right, title or interest in Plaintiff's property.

126. Furthermore, the conduct of Defendants and/or one or more of the Doe Defendants, and each of them, as herein described, was so malicious and contemptible that it would be looked down upon and despised by ordinary people. Plaintiff is therefore entitled to punitive damages in an amount appropriate to punish Defendants and to deter others from engaging in similar conduct.

## SECOND CAUSE OF ACTION

## DECLARATORY RELIEF COUNT - 2 "DOES THE LOAN BEING IN DEFAULT AT THE TIME OF THE ASSIGNMENTS, IDENTIFIED AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 CONFLICT WITH 26 U.S.C. §§ 860A-860G?"

(against all Defendants, and Associates in Fact)

127. Plaintiff re-alleges all preceding paragraphs 1-126 and incorporates them by reference as if fully set forth herein.

FIRST AMENDED COMPLAINT

39

128. For his second and distinct cause of action Plaintiff is informed and believes, and based on such information and belief, avers that a genuine controversy exists as to whether or not the Plaintiff's loan, being in default at the time of the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603 conflict with 26 U.S.C. §§ 860A-860G. ADOT1 and ADOT2, identified as instrument numbers 200904080002148 and 20121105-0000603

129. Plaintiff is informed and believes, and based on such information and belief, avers that if the court finds that the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, is not "VOID" that the Defendants have violated the tax status of the REMIC statute set forth in the IRC.

130. Plaintiff is informed and believes, and based on such information and belief, avers that this Court is the proper authority to interpret public policy, as SEC and IRC statutes, and to grant Declaratory Relief in the form of a Court Order determining whether or not the Plaintiff's loan was in default at the time the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, was executed.

131. Plaintiff is informed and believes, and based on such information and belief, avers that taxation on prohibited transactions are governed by 26 U.S.C. § 860F(a)(1) which states:

**"There is hereby imposed for each taxable year of a REMIC a tax equal to 100 percent of the net income derived from prohibited transactions.**

132. Plaintiff is informed and believes, and based on such information and belief, avers that if this Court determines that the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark

FIRST AMENDED COMPLAINT

County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, is a valid conveyance, it is a contribution of Plaintiff's loan, which was in default and therefore a prohibited transaction as governed by 26 U.S.C. § 860F(a)(1) and as such created a taxable event equal to 100 percent of the amount of the Plaintiff's loan.

133. Plaintiff is informed and believes, and based on such information and belief, avers that none of the Defendants have reported or paid the mandatory imposed tax equal to 100 percent of the amount of the Plaintiff's loan as a result of the conveyance purported by the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, and as such Plaintiff is bringing this information forward and are entitled to monies from the IRS for identifying the contribution of Plaintiff's loan as well as other loans that were contributed to the MASTR REMIC Trust that were prohibited transactions.

134. Wherefore, Plaintiff requests that this court declare that the Plaintiff's loan **was** in default, at time of the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, and was consequently a prohibited transaction and is therefore **VOID**. Or as the alternative, demonstrate that contribution of Plaintiff's loan as well as the loans identified by Plaintiff that were transferred to the MASTR REMIC Trust were not Void by ordering Defendants to produce the Opinion Letter authorizing the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603 is a true and valid transaction and as such created a taxable event equal to 100 percent of the amount of the loans identified by Plaintiff that were contributed to the MASTR REMIC Trust involving prohibited transactions pursuant to 26 U.S.C. § 860F(a)(1) and to require Defendants to provide the tax returns that identified the taxable event(s) and that a tax equal to 100 percent of the amount of the loans identified by Plaintiff was paid.

FIRST AMENDED COMPLAINT

41

# THIRD CAUSE OF ACTION

## DECLARATORY RELIEF COUNT - 3 "DID THE VALUE OF PLAINTIFF'S PROPERTY AT THE TIME OF THE ASSIGNMENTS, IDENTIFIED AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 COMPLY WITH THE "80% VALUE-TO-LOAN RATIO" OF 26 U.S.C. §§ 860A-860G?

(against Defendants USBANK, MASTR, MASTI, CERTIFICATEHOLDERS OF MASTR and Associates in Fact)

135. Plaintiff re-alleges all preceding paragraphs 1-134 and incorporates them by reference as if fully set forth herein.

136. For his third and distinct cause of action Plaintiff is informed and believes, and based on such information and belief, avers that a genuine controversy exists as to whether or not the value of the property, at the time of ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, complied with the Value-To-Loan ratio requirement of 26 U.S.C. §§ 860A-860G.

137. Plaintiff is informed and believes, and based on such information and belief, avers that this Court is the proper authority to interpret public policy, as SEC and IRC statutes, and Declaratory Relief in the form of a Court Order as to whether or not the value of Plaintiff's property was worth more or less at the time the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, was executed than it was at the time the loan was originated. Accordingly, Plaintiff avers that it did not comply with the Value-To-Loan ratio requirement of 26 U.S.C. §§ 860A-860G.

138. Plaintiff is informed and believes, and based on such information and belief, avers that the Value-To-Loan ratio requirement of 26 U.S.C. §§ 860A-860G mandates the Value-To-Loan of a property to be transferred into a REMIC trust must be that of 80% Value-To-Loan ratio or higher.

139. Plaintiff is informed and believes, and based on such information and belief, avers that because the value of Plaintiff's property declined so dramatically after the loan origination that it cannot possibly comply with the 80% Value-To-Loan ratio or higher, and is therefore a prohibited transaction.

140. Plaintiff is informed and believes, and based on such information and belief, avers that taxation on prohibited transactions are governed by 26 U.S.C. § 860F(a)(1) which states:

> **"There is hereby imposed for each taxable year of a REMIC a tax equal to 100 percent of the net income derived from prohibited transactions.**

141. Plaintiff is informed and believes, and based on such information and belief, avers that if this Court determines that the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, is a valid conveyance, it is a contribution of Plaintiff's loan, which was less than the Value-To-Loan ratio requirement of 26 U.S.C. §§ 860A-860G and therefore a prohibited transaction as governed by 26 U.S.C. § 860F(a)(1) and as such created a taxable event equal to 100 percent of the amount of the Plaintiff's loan.

142. Plaintiff is informed and believes, and based on such information and belief, avers that none of the Defendants have reported or paid the mandatory imposed tax equal to 100 percent of the amount of the Plaintiff's loan as a result of the conveyance purported by the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, and as such Plaintiff is bringing this information forward and is entitled to monies from the IRS for identifying the contribution of Plaintiff's loan as well as other loans that were contributed to the MASTR REMIC Trust involving prohibited transactions pursuant to 26 U.S.C. § 860F(a)(1).

FIRST AMENDED COMPLAINT

43

143. Wherefore, Plaintiff requests that this court declare that the Plaintiff's loan **was** less than the Value-To-Loan ratio requirement, at time of the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, and was consequently a prohibited transaction and is therefore **VOID**. Or as the alternative, demonstrate that contribution of Plaintiff's loan as well as the loans identified by Plaintiff that were transferred to the MASTR REMIC Trust were not Void by ordering Defendants to produce the Opinion Letter authorizing the ADOT recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 200904080002148 is a true and valid transaction and as such created a taxable event equal to 100 percent of the amount of the loans identified by Plaintiff that were contributed to the MASTR REMIC Trust involving prohibited transactions pursuant to 26 U.S.C. § 860F(a)(1) and to require Defendants to provide the tax returns that identified the taxable event(s) and that a tax equal to 100 percent of the amount of the loans identified by Plaintiff was paid.

## FOURTH CAUSE OF ACTION

## DECLARATORY RELIEF COUNT - 4 "DOES THE ASSIGNMENTS, IDENTIFIED AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 COMPLY WITH THE "TIMING REQUIREMENT" OF 26 U.S.C. §§ 860A-860G?"

(against Defendants USBANK, MASTR, MASTI, CERTIFICATEHOLDERS OF MASTR and Associates in Fact)

144. Plaintiff re-alleges all preceding paragraphs 1-143 and incorporates them by reference as if fully set forth herein.

145. For his fourth and distinct cause of action Plaintiff is informed and believes, and based on such information and belief, avers that a genuine controversy exists as to whether or not the ADOT1

FIRST AMENDED COMPLAINT

44

and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603 complies with the "Timing Requirement" of 26 U.S.C. §§ 860A-860G.

146. Plaintiff is informed and believes, and based on such information and belief, avers that this Court is the proper authority to interpret public policy, as SEC and IRC statutes, and Declaratory Relief in the form of a Court Order as to whether or not the Plaintiff's loan complies with the "Timing Requirement" of 26 U.S.C. §§ 860A-860G at the time the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, was executed.

147. Plaintiff is informed and believes, and based on such information and belief, avers that taxation on contributions after startup are governed by 26 U.S.C. §§ 860G(d)(1) which states:

**"Except as provided in paragraph (2), if any amount is contributed to a REMIC after the startup day, there is hereby imposed a tax for the taxable year of the REMIC in which the contribution is received equal to 100 percent of the amount of such contribution."**

148. Plaintiff is informed and believes, and based on such information and belief, avers that if this Court determines that the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, is a valid conveyance, it is a contribution of Plaintiff's loan to the Trust after the startup as governed by 26 U.S.C. §§ 860G(d)(1) and as such created a taxable event equal to 100 percent of the amount of the Plaintiff's loan.

149. Plaintiff is informed and believes, and based on such information and belief, avers that none of the Defendants have reported or paid the mandatory imposed tax equal to 100 percent of the amount of the Plaintiff's loan as a result of the conveyance purported by the ADOT1 and ADOT2 were

FIRST AMENDED COMPLAINT

executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603, and as such Plaintiff is bringing this information forward and is entitled to monies from the IRS for identifying the contribution of Plaintiff's loan as well as other loans contributed to the MASTR REMIC Trust after the startup day.

150. Wherefore, Plaintiff requests that this court declare that the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603 **does not** comply with the "Timing Requirement" of 26 U.S.C. §§ 860A-860G and is therefore **VOID**. Or as the alternative, demonstrate that contribution of Plaintiff's loan as well as the loans identified by Plaintiff that were transferred to the MASTR REMIC Trust were not Void by ordering Defendants to produce the Opinion Letter authorizing the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603 is a true and valid transaction and as such created a taxable event equal to 100 percent of the amount of the loans identified by Plaintiff that were contributed to the MASTR REMIC Trust after the startup day as governed by 26 U.S.C. §§ 860G(d)(1) and to require Defendants to provide the tax returns that identified the taxable event(s) and that a tax equal to 100 percent of the amount of the loans identified by Plaintiff was paid.

///
///
///
///
///
///
///
///
///

FIRST AMENDED COMPLAINT

# FIFTH CAUSE OF ACTION

## DECLARATORY RELIEF COUNT - 5 "DOES THE ASSIGNMENTS, IDENTIFIED AS INSTRUMENT NUMBERS 200904080002148 & 20121105-0000603 CONVEY A NOTE AND DEED OF TRUST  THAT IS A "QUALIFIED LOAN" as defined by 26 U.S.C. §§ 860A-860G?"

(against Defendants USBANK, MASTR, MASTI, CERTIFICATEHOLDERS OF MASTR and Associates in Fact)

151. Plaintiff re-alleges all preceding paragraphs 1-150 and incorporates them by reference as if fully set forth herein.

152. For his fifth and distinct cause of action Plaintiff is informed and believes, and based on such information and belief, avers that a genuine controversy exists as to whether or not the ADOT1 and ADOT2 were executed and subsequently recorded in the Clark County Recorder's Office as Instruments No. 200904080002148 and No. 20121105-0000603 complies with the "Qualified Loan Requirement" of 26 U.S.C. §§ 860A-860G.

153. Plaintiff is informed and believes, and based on such information and belief, avers that this Court is the proper authority to interpret public policy, as SEC and IRC statutes, and Declaratory Relief in the form of a Court Order as to whether or not the Plaintiff's loan complies with the "Qualified Loan Requirement" of 26 U.S.C. §§ 860A-860G at the time the ADOT, recorded in the Clark County Recorder's Office on April 8, 2009 as Instrument No. 200904080002148, was executed.

154. Plaintiff is informed and believes, and based on such information and belief, avers that taxation on prohibited transactions are governed by 26 U.S.C. § 860F(a)(1) which states:

> "There is hereby imposed for each taxable year of a REMIC a tax equal to 100 percent of the net income derived from prohibited transactions.

FIRST AMENDED COMPLAINT