UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
────────────────────────────

RANDY SPRINGER,

                    PLAINTIFF,                      15-cv-1107(JGK)

            - against -                             MEMORANDUM OPINION &
                                                    ORDER
U.S. BANK NATIONAL ASSOCIATION AS
TRUSTEE FOR MASTR ASSET BACKED
SECURITIES TRUST 2005-HE1, MORTGAGE
PASS THROUGH CERTIFICATES, SERIES
2005-HE1, MASTR ASSET BACKED
SECURITIES TRUST 2005-HE1, MORTGAGE
PASS THROUGH CERTIFICATES, SERIES
2005-HE1, THE CERTIFICATEHOLDERS OF
MASTR ASSET BACKED SECURITIES TRUST
2005-HE1, MORTGAGE PASS THROUGH
CERTIFICATES, SERIES 2005-HE1,
MORTGAGE ASSET SECURITIZATION
TRANSACTIONS, INC., ROES 1-10 AND
DOES 1-10 INCLUSIVE, REPRESENTING A
CLASS OF UNKNOWN PERSONS WHO CLAIM OR
HAVE THE RIGHT TO CLAIM AN INTEREST
IN CERTAIN REAL PROPERTY LOCATED IN
LAS VEGAS, NEVADA

                    DEFENDANTS.
────────────────────────────

JOHN G. KOELTL, District Judge:

        The plaintiff, Randy Springer ("Springer" or "plaintiff"),

proceeding pro se alleges twenty causes of action against the

defendants, U.S. Bank National Association ("U.S. Bank"), as the

trustee for the MASTR Asset Backed Securities Trust 2005-HE1,

Mortgage Pass Through Certificates, Series-HE1; the MASTR Trust;

the certificate holders of the Trust; and various Roes and Does.

The defendant U.S. Bank moved pursuant to Rules 8(a)(2), 9(b),

and 12(b)(6) of the Federal Rules of Civil Procedure to dismiss

with prejudice the claims asserted by the plaintiff for failure
to state a claim.

This Court has jurisdiction under 28 U.S.C. § 1331 over the
plaintiff's federal claims under the Truth in Lending Act, 15
U.S.C. § 1601 et seq., and the Fair Debt Collection Practices
Act, 15 U.S.C. § 1692 et seq. The Court has supplemental
jurisdiction under 28 U.S.C. § 1367 over the plaintiff's state
law claims arising under Nevada and New York law. For the
reasons explained below, U.S. Bank's motion to dismiss is
granted in part and denied in part.

## I.

In deciding a motion to dismiss pursuant to Rule 12(b)(6),
the allegations in the complaint are accepted as true, and all
reasonable inferences must be drawn in the plaintiff's favor.
McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 191 (2d Cir.
2007). The Court's function on a motion to dismiss is "not to
weigh the evidence that might be presented at a trial but merely
to determine whether the complaint itself is legally
sufficient." Goldman v. Belden, 754 F.2d 1059, 1067 (2d Cir.
1985). The Court should not dismiss the complaint if the
plaintiff has stated "enough facts to state a claim to relief
that is plausible on its face." Bell Atl. Corp. v. Twombly, 550
U.S. 544, 570 (2007). "A claim has facial plausibility when the

plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009). While the Court should construe the factual allegations in the light most favorable to the plaintiff, "the tenet that a court must accept as true all of the allegations contained in the complaint is inapplicable to legal conclusions." Id.

When faced with a pro se complaint, the Court must "construe [the] complaint liberally and interpret it to raise the strongest arguments that it suggests." Chavis v. Chappius, 618 F.3d 162, 170 (2d Cir. 2010) (citation and internal quotation marks omitted). "Even in a pro se case, however, . . . threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Id. (citation omitted). Thus, although the Court is "obligated to draw the most favorable inferences" that the complaint supports, it "cannot invent factual allegations that [the plaintiff] has not pled." Id.; see also Bowden v. Duffy, No. 13-cv-717, 2014 WL 338786, at *1 (S.D.N.Y. Jan. 30, 2014);

When presented with a motion to dismiss pursuant to Rule 12(b)(6), the Court may consider documents that are referenced in the complaint, documents that the plaintiff relied on in bringing suit and that are either in the plaintiff's possession

3

or that the plaintiff knew of when bringing suit, or matters of which judicial notice may be taken. See Chambers v. Time Warner, Inc., 282 F.3d 147, 153 (2d Cir. 2002); see also Rullan v. N.Y.C. Sanitation Dep't, No. 13-cv-5154 (JGK), 2014 WL 2011771, at *1 (S.D.N.Y. May 16, 2014), aff'd, 607 F. App'x 86 (2d Cir. 2015); Winfield v. Citibank, N.A., 842 F. Supp. 2d 560, 564 (S.D.N.Y. 2012).

II.

The following facts alleged in the First Amended Complaint ("FAC") are accepted as true for the purposes of the defendant's motion to dismiss.

The plaintiff's claims arise out of a mortgage loan he obtained for property located in Las Vegas, in Clark County, Nevada. Compl., Ex. 1. Springer executed a promissory note in favor of Novelle Financial Services, secured by a deed of trust for the Las Vegas property. FAC ¶ 19. The note was executed on November 24, 2004 and recorded in the Clark County Recorder's Office on January 3, 2005. FAC ¶ 40. The promissory note was assigned to U.S. Bank on April 1, 2009, under instrument number 20090408-0002148 and recorded in the Clark County's Recorder's Office on April 8, 2009. FAC ¶ 66; Compl., Ex. 2. Another assignment to U.S. Bank was executed on October 19, 2012, and recorded in the Clark County Recorder's Office on November 5,

4

2012. FAC ¶¶ 50, 52; Compl., Ex. 3. U.S. Bank, based in Minnesota, is the trustee for the MASTR Asset Backed Securities Trust 2005-HE1 ("the Trust"), a trust formed under the laws of New York. FAC ¶¶ 30-31. The Trust, a Real Estate Mortgage Investment Conduit ("REMIC") holds a number of mortgages which have been securitized. FAC ¶¶ 82-83. The notes are owned by the Trust, for the benefit of the investors or certificate holders of the Trust. FAC ¶ 82.[1]

Springer filed a complaint in this action on February 17, 2015. On July 13, 2015, the plaintiff filed the FAC. According to the FAC, Springer contends that the defendants "fail[ed] to comply with the Prospectus for the MASTR Asset Backed Securities Trust 2005-HE1, Mortgage Pass-Through Certificates, Series 2005-HE1, the Promissory Note and the Deed of Trust." FAC ¶ 1.

---

[1] The FAC names the MASTR Asset Backed Securities Trust 2005-HE1 as a defendant, but under New York law, a trust cannot sue or be sued, and suits must be brought by or against the trustee. McCarty v. The Bank of N.Y. Mellon, No. 14-cv-6756 (AT), 2015 WL 5821405, at *1 n.1 (S.D.N.Y. Sept. 8, 2015); Anh Nguyet Tran v. Bank of N.Y., No. 13-cv-580 (RPP), 2014 WL 1225575, at *1 n.4 (S.D.N.Y. Mar. 24, 2014) aff'd, 592 F. App'x 24 (2d Cir. 2015) order amended and superseded, 610 F. App'x 82 (2d Cir. 2015). Accordingly, all the claims against the Trust are dismissed. Moreover, the complaint also names the certificate holders in the Trust and various Roes and Does. The claims against these defendants suffer from the same deficiencies as the claims against U.S. Bank, and the motion to dismiss is treated as having been brought on behalf of all the defendants. See McCarty, 2015 WL 5821405, at *1 n.1. The present motion does not resolve the claims against Mortgage Asset Securitization Transaction, Inc., against whom Springer is seeking a default judgment.

The Trust is governed by a Pooling and Servicing Agreement ("PSA"), and the Trustee receives payment from the entity servicing the loans in the Trust. Among other things, the servicer is tasked with processing payments and instituting foreclosure actions. FAC ¶¶ 90-91. The FAC contends that the defendants failed to deposit specific documents with the Custodian of Records to complete the assignments and transfer of the plaintiff's note and deed of trust to the Trust. FAC ¶ 94. The plaintiff alleges that the defendants violated the requirements for securitized mortgages contained in the Trust Prospectus. FAC ¶ 96.

Although the FAC does not specify the date of Springer's default on his mortgage payments, it is clear from the allegations that Springer defaulted on the mortgage payments before the assignments took place in April 2009 and October 2012. FAC ¶ 58(e). The FAC alleges that a notice of default was filed at some unspecified time, indicating that U.S. Bank was the beneficiary of the promissory note. FAC ¶ 68. Springer contends that U.S. Bank does not hold any interest in the property by virtue of the assignments of the promissory note and deed of trust. The FAC alleges that the defendants failed to perfect their security interest in the property, and that despite this failure, the defendants and their agents "have

collected and attempted to collect on this Note and enforce the
Deed of Trust with the knowledge that they have no legal right
to do so." FAC ¶ 19.

Springers brings several claims seeking declaratory relief,
as well as several causes of action under state and federal law:
(1) one cause of action for declaratory relief to determine the
status of the defendants' interest in the mortgage and deed of
trust, FAC ¶¶ 116-26 (Count 1); (2) six causes of action for a
declaratory judgment that the defendants violated several
provisions of the Internal Revenue Code concerning Real-Estate
Mortgage Investment Conduits ("REMIC"), FAC ¶¶ 127-77 (Counts 2-
8); (3) one cause of action seeking a declaratory judgment that
the Trust violated regulations of the Securities and Exchange
Commission ("SEC"), FAC ¶¶ 178-82 (Count 9); (4) one cause of
action seeking a declaratory judgment that the Trust violated
New York Estates, Powers, and Trusts Law, FAC ¶¶ 183-86 (Count
10); (5) three causes of action seeking a declaratory judgment
that the assignments violated provisions of the Trust
Prospectus, FAC ¶¶ 187-98 (Counts 11-13); (6) one cause of
action seeking cancellation of the instruments assigning the
mortgage and deed of trust to the defendants, FAC ¶¶ 199-211
(Count 14); (7) one cause of action for fraud and deceit, FAC ¶¶
212-16 (Count 15); one cause of action alleging violations of

New York General Business Law § 349, FAC ¶¶ 217-25 (Count 16);
one cause of action alleging violations of several provisions of
the Nevada Business Code, FAC ¶¶ 226-54 (Count 17); one cause of
action alleging violations of the Fair Debt Collection Practices
Act, FAC ¶¶ 256-70 (Count 18); one cause of action alleging
violations of the Truth in Lending Act, FAC ¶¶ 271-90 (Count
19); and one cause of action for a declaratory judgment that the
defendants' foreclosure is statutorily defective under Nevada
Revised Statutes, FAC ¶¶ 291-320 (Count 20).

## III.

### A.

The crux of Springer's complaint is that the assignments of
the note and the deed of trust were defective. The FAC alleges
that the assignments of the note were recorded in the Clark
County Recorder's Office, but the FAC contends that "notes do
not move through assignments in the land records." FAC ¶ 48.
According to Springer, because the note and deed were never
properly assigned, the note and deed could not be deposited into
the Trust. FAC ¶ 49. Springer argues that the defective
assignments failed to comply with the Prospectus for the Trust.
U.S. Bank moves to dismiss the FAC, arguing that Springer lacks
standing to challenge the assignments and lacks standing to

bring a claim based on the Prospectus because Springer was never an investor in the Trust.

Springer lacks Article III standing to assert claims that are based on an alleged failure to comply with the Prospectus. Article III of the Constitution of the United States limits the jurisdiction of federal courts to "Cases" and "Controversies." Lujan v. Defenders of Wildlife, 504 U.S. 555, 559 (1992). To satisfy the requirements of Article III standing, a plaintiff must show that (1) he has suffered an actual or imminent injury in fact, which is concrete and particularized; (2) there is a causal connection between the injury and defendant's actions; and (3) it is likely that a favorable decision in the case will redress the injury. Id. at 560–61. "The party invoking federal jurisdiction bears the burden of establishing these elements." Id. at 561.

Because the judicial power of federal courts "exists only to redress or otherwise protect against injury to the complaining party," federal jurisdiction "can be invoked only when the plaintiff himself has suffered 'some threatened or actual injury resulting from the putatively illegal action. . . .'" Warth v. Seldin, 422 U.S. 490, 499 (1975) (quoting Linda R.S. v. Richard D., 410 U.S. 614, 617 (1973)). Moreover, the requirement of standing "subsists through all

stages of federal judicial proceedings, trial and appellate. . . ." Spencer v. Kemna, 523 U.S. 1, 7(1998) (quoting Lewis v. Cont'l Bank Corp., 494 U.S. 472, 477-78 (1990)). "This means that, throughout the litigation, the plaintiff 'must have suffered, or be threatened with, an actual injury traceable to the defendant and likely to be redressed by a favorable judicial decision.'" Id. (quoting Lewis, 494 U.S. at 477); see also S.W. v. N.Y.C. Dep't of Educ., 646 F. Supp. 2d 346, 356 (S.D.N.Y. 2009).

In Rajamin v. Deutsche Bank National Trust Co., 757 F.3d 79 (2d Cir. 2014), a class of homeowners alleged that the defendant, Deutsche Bank National Trust, did not have a claim of ownership over their mortgage loans because the assignment of the promissory notes and deeds of trust to Deutsche Bank was defective. Id. at 85. The plaintiffs sought a judgment declaring that the defendants did not own their mortgage loans. Id. at 80-81. The Second Circuit Court of Appeals concluded that the plaintiffs did not have constitutional standing to challenge the assignments on the grounds that Deutsche Bank failed to comply with the assignment agreements because the plaintiffs did not have a cognizable injury. Id. at 86. The plaintiffs in Rajamin alleged that they were injured by making payments to the defendants who were not the proper parties to receive and

collect the mortgage payments. Id. at 85. The Court noted that the plaintiffs did not dispute that they took out the loans and that they were obligated to repay them. Id. The plaintiffs did not allege that they had paid more than they owed. Id. The Court also noted that the plaintiffs' argument that they were exposed to multiple judgments for payment was "highly implausible" because if it were true that the defendant trustee did not own the mortgage loans, it was unlikely that the rightful owners of the mortgage loans would not have tried to collect payment. Id.

Springer's claims are very similar to the claims in Rajamin. Specifically, the FAC contends that "while Plaintiff owes a debt to someone, he does not owe it to any of the Defendants." FAC ¶ 75. Springer argues that U.S. Bank is not the true and correct beneficiary of his loan. FAC ¶ 55. The FAC alleges that Springer has been prejudiced in several ways. He is allegedly unable to negotiate a loan modification or to negotiate a short sale with the "true and correct beneficiary of Plaintiff's loan." FAC ¶ 55(e). Springer also contends he is unable to obtain new financing or to provide clear and correct title to a potential buyer. FAC ¶ 55(c). Finally, the FAC also alleges that the defective assignments to the asset backed securities trust "exposes [Springer] to multiple judgments and/or demands for payment." FAC ¶ 55(e). Springer argues that a

homeowner "experiences real harm when a party with no interest in the debt forecloses because the homeowner has lost his home to the wrong party and is deprived of the opportunity to explore options with the true debt owner." FAC ¶ 80.

Under the Rajamin analysis, however, Springer's alleged injuries are hypothetical and conjectural, and he fails to allege injuries that are sufficiently concrete to show constitutional standing to pursue his claims. See Rajamin, 757 F.3d at 86. Springer plainly does not dispute that he owes money on his loan obligation. FAC ¶ 109. And while Springer claims that he is "subject to multiple financial judgments" he also concedes that he "does not know who the current beneficiary of his Note and Deed of Trust actually is." FAC ¶ 114. Springer does not allege that he has received demands for payment from anyone other than the defendant U.S. Bank or its servicing agents. Citing Rajamin's holding, several courts in this District have rejected claims that are very similar to Springer's claims. Le Bouteiller v. The Bank of N.Y. Mellon, No. 14-cv-6013 (PGG), 2015 WL 5334269, at *4-5 (S.D.N.Y. Sept. 11, 2015); McCarty, 2015 WL 5821405, at *3; Obal v. Deutsche Bank Nat'l Trust Co., No. 14-cv-2463 (RWS), 2015 WL 631404, at *2 (S.D.N.Y. Feb. 13, 2015) reconsideration denied sub nom. Obal v. Deutsche Bank Nat'l Trust Co. as Tr. for Morgan Stanley Mortgage

12

Loan Trust 2004-9, No. 14-cv-2463 (RWS), 2015 WL 3999455
(S.D.N.Y. June 29, 2015).

In Le Bouteiller, for example, the district court concluded
that the alleged harm of being unable to negotiate a short sale,
negotiate a loan modification, and obtain new financing were too
speculative and hypothetical to establish constitutional
standing. Le Bouteiller, 2015 WL 5334269, at *4-5. The district
court in Obal similarly held that an allegation that the true
owner of the loan *may* demand payment does not establish standing
under Rajamin. Obal, 2015 WL 631404, at *3. Thus, Springer, like
the plaintiffs in Rajamin, Le Bouteiller, and Obal, does not
have a concrete injury and lacks Article III standing to
challenge the validity of the assignments of his loan.

Springer argues that he has standing to challenge the
validity of the assignments because the assignments conflict
with the Prospectus. Springer attempts to distinguish Rajamin by
pointing out that his claims focus not on a violation of the
PSA—the claim at issue in Rajamin—but on violations of the
Prospectus. In Rajamin, the Court of Appeals concluded that the
plaintiffs lacked prudential standing to assert a violation of
the PSA. Rajamin, 757 F.3d at 82-83, 86.

> Even if plaintiffs had Article III standing, we
> conclude that they lack prudential standing. The
> "prudential standing rule . . . normally bars
> litigants from asserting the rights or legal

> interests of others in order to obtain relief from injury to themselves." Warth, 422 U.S. at 509. "[T]he plaintiff generally must assert his own legal rights and interests, and cannot rest his claim to relief on the legal rights or interests of third parties." Id. at 499.

Id. at 86. The Rajamin plaintiffs alleged non-compliance with the PSA provisions, but the Court noted that the plaintiffs were not parties to the PSA nor beneficiaries of the assignments and thus lacked standing to enforce the agreements. Id. at 87. The Court of Appeals also concluded that the plaintiffs could not rely on New York trust law to argue that the trustee's actions concerning the assignment of the mortgages were not authorized because the plaintiffs were not beneficiaries of the trust. Id. at 87-88. Springer acknowledges that he cannot bring claims based on the PSA because he is not a party to the PSA. Pl.'s Mem. of Law in Opp. to Mot. to Dismiss at 3-4. However, Springer contends that the Prospectus, unlike the PSA, is a public document, and therefore, he has standing to assert claims based on discrepancies between the assignments of the note and deed of trust and the disclosures in the Prospectus.

A prospectus is a document that provides information to investors or potential investors, and the plaintiff acknowledges as much. Id. The prospectus is not directed to the mortgagors whose mortgages are contained in the Trust. A mortgage borrower

does not have standing to complain about a trust's failure to comply with the prospectus. See Masterson v. Bank of N.Y. Mellon, No. 14-cv-08741 (DDP) (AJWX), 2015 WL 1285039, at *2 (C.D. Cal. Mar. 20, 2015) (concluding that the plaintiff lacked standing to assert that the assignment of a deed violated several terms of a trust's prospectus and dismissing with prejudice the plaintiff's claims); see also City of Ann Arbor Emps.' Ret. Sys. v. Citigroup Mortg. Loan Trust Inc., 703 F. Supp. 2d 253, 260 (E.D.N.Y. 2010) ("While Plaintiffs allege the falsity of statements contained in the common Registration and Prospectus Statements, they cannot allege harm flowing from reliance on the sixteen Prospectus Supplements issued in connection with securities that Plaintiffs did not purchase.").

In this case, Springer was not the intended recipient of the Prospectus, and he does not allege that he purchased any of the certificates issued by the Trust. To the extent Springer's amended complaint focuses on the Prospectus rather than on the PSA, his attempts to plead around the holding and rationale of Rajamin are unsuccessful. There is no reason why claims that U.S. Bank failed to comply with the Prospectus provide prudential standing when it is clear that under Rajamin, Springer would lack prudential standing to assert that U.S. Bank failed to comply with the PSA. Just as he would not have an

interest to assert violations of the PSA because he is not a party to the PSA, Springer does not have standing to assert violations of the Prospectus because he is not an investor or potential investor in the Trust. The Eleventh, Twelfth, and Thirteenth Causes of Action seek a declaratory judgment that the assignments violated provisions of the Prospectus. FAC ¶¶ 187-98. Similarly, the Fourteenth Cause of Action seeks to invalidate the assignments of the mortgage and deed of trust to the defendant. These claims should be dismissed in their entirety (1) for lack of Article III standing because Springer lacks a cognizable injury and (2) for lack of prudential standing because Springer cannot assert the rights of others under the Prospectus.

Similarly, the Tenth Cause of Action seeks a declaratory judgment that the delivery or transfer of the note violated New York Estates, Powers & Trusts Law ("EPTL"). But Springer, who is not a beneficiary of the Trust, lacks standing to assert a violation of New York EPTL. See Rajamin, 757 F.3d at 88 ("[U]nder New York law, only the intended beneficiary of a private trust may enforce the terms of the trust."); McCarty, 2015 WL 5821405, at *5; Obal, 2015 WL 631404, at *4 ("Obal is not a trust beneficiary, and therefore lacks standing to seek a

declaration under the New York Trust Law that the [a]ssignment is void.").

Moreover, Springer's claim under New York EPTL also fails on the merits. The Rajamin plaintiffs argued that if the assignments did not comply with the PSA the court should conclude that the conveyances were void under EPTL § 7-2.4. Rajamin, 757 F.3d at 87. After first concluding that the plaintiffs lacked standing to assert noncompliance with the PSA or to enforce the terms of the trust, the Court concluded that violations of the PSA do not render an assignment void under EPTL § 7-2.4; the assignment is at most voidable and the agreement by the parties to the assignment may ratify an otherwise defective assignment. Id. at 87-88, 89-90. In his opposition to the motion to dismiss, Springer asks that this Court liberally interpret EPTL § 7-2.4 and conclude that the assignments are void because they violated the terms of the trust. But the Court of Appeals plainly rejected this broad interpretation of EPTL § 7-2.4. See Bouteiller, 2015 WL 5334269, at *7. Springer is not an intended beneficiary of the Trust and thus cannot attempt to render an action by the trustee void. Thus, the Tenth Cause of Action should be dismissed because Springer lacks standing to assert a violation of New York EPTL § 7-2.4 because he is not a beneficiary of the trust and because

17

the Court of Appeals has rejected the interpretation of § 7-2.4 that Springer proposes.

### B.

U.S. Bank also argues that Springer does not have standing to challenge the assignments by arguing that the assignments violate the promissory note and the deed of trust. Springer's claim with respect to the invalidity of the assignments based on the terms of the promissory note and deed of trust raises other issues from those discussed in <u>Rajamin</u> and its progeny.

The First and Twentieth Causes of Action seek a declaratory judgment adjudicating the status of the defendants' property interest in the promissory note and deed of trust and allege a defective foreclosure under Nevada law. FAC ¶¶ 116-26, 291-320. Springer seeks a declaratory judgment that U.S. Bank does not have an interest in the plaintiff's loan because the assignments from Novelle Financial Services to U.S. Bank are void. FAC ¶¶ 119, 123.

Under the Declaratory Judgment Act, "[i]n a case of actual controversy within its jurisdiction . . . any court of the United States . . . *may* declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a) (emphasis added). A court's exercise of jurisdiction

under the DJA is discretionary. See Dow Jones & Co. v. Harrods,
Ltd., 346 F.3d 357, 359 (2d Cir. 2003) (per curiam); Bruce
Winston Gem Corp. v. Harry Winston, Inc., No. 09-cv-7352 (JGK),
2010 WL 3629592, at *6 (S.D.N.Y. Sept. 16, 2010). The Court of
Appeals for the Second Circuit has held that federal district
courts must entertain declaratory judgment actions when the
judgment "will serve a useful purpose in clarifying and settling
the legal relations in issue" or "when it will terminate and
afford relief from the uncertainty, insecurity, and controversy
giving rise to the proceeding." Cont'l Cas. Co. v. Coastal Sav.
Bank, 977 F.2d 734, 737 (2d Cir. 1992) (internal citation
omitted); see also Duane Reade, Inc. v. St. Paul Fire and Marine
Ins. Co., 411 F.3d 384, 389 (2d Cir. 2005).

The analysis raises two issues "(1) whether subject matter
exists because the declaratory judgment action meets the
constitutional case or controversy requirement; and, if so
(2) whether the Court should exercise that jurisdiction." U.S.
Dep't of Treasury v. Official Comm. of Unsecured Creditors of
Motors Liquidation Co., 475 B.R. 347, 358 (S.D.N.Y. 2012)
(internal quotation marks and citations omitted) (emphasis in
the original). "But the first question must be answered before
there is any discussion of the issues raised by Duane Reade[.]
'Either there is an actual controversy or there is not. If there

is not, there is no discretionary action that a court can take.'" Id. at 358-59 (quoting Certain Underwriters at Lloyd's, London v. St. Joe Minerals Corp., 90 F.3d 671, 675 (2d Cir. 1996)). In determining whether this Court has subject matter jurisdiction over Springer's declaratory judgment claims, the Court should evaluate whether the dispute is sufficiently real and immediate by determining whether the declaratory relief sought relates to a dispute "where the alleged liability has already accrued or the threatened risk occurred." See Dow Jones & Co., Inc. v. Harrods, Ltd., 237 F. Supp. 2d 394, 407 (S.D.N.Y. 2002), aff'd, 346 F.3d 357 (2d Cir. 2003).

There is an actual case or controversy in this case as it pertains to the First and Twentieth Causes of Action. There is a real dispute as to whether U.S. Bank entered into assignments that violated the terms of the promissory note and the deed of trust. Springer contends that the defendants claim they have a secured enforceable interest in and a perfected lien against the plaintiff's promissory note, deed of trust, and property, but Springer contends that the lien assigned by Novelle Financial Services was a "non-existent" mortgage and nothing was subsequently transferred to U.S. Bank. FAC ¶¶ 119-20. Springer also argues that he is subject to an ongoing injury due to the risk of a statutorily defective foreclosure. FAC ¶ 122. The FAC

alleges that the defendants filed a notice of default. FAC ¶ 68.
The FAC also alleges that the defendants "do not own the Note,
have no legal authority to enforce the Note or Deed of Trust"
and that the notice of default is "void ab initio." FAC ¶¶ 105-
06. The defendants have allegedly "commenced foreclosure of
Plaintiff's property through the non-judicial statutory scheme
set forth in Nevada Revised Statutes." FAC ¶ 297. Springer
alleges that the foreclosure is defective under Nevada law
because the assignments were void due to the fact that the deed
of trust was not properly assigned with the promissory note. FAC
¶¶ 292-301.

It is undisputed that Springer was a party to the
promissory note and the deed of trust. He claims that he was
harmed because U.S. Bank initiated a non-judicial foreclosure
based on invalid assignments. This injury is distinct from the
injury alleged as part of Springer's other declaratory judgment
claims. There is a concrete injury that can be redressed by a
declaratory judgment on the validity of the underlying
assignments. The validity of the assignments does not hinge on
whether U.S. Bank and the other defendants complied with the PSA
or Prospectus, but only on whether the assignments were
permitted by the terms of the promissory note, the deed of
trust, and Nevada law. Because Springer pleads that the

defendants initiated an improper non-judicial foreclosure, FAC ¶ 297, Springer has shown the requisite injury for Article III standing, and U.S. Bank does not dispute that non-judicial foreclosure proceedings have commenced. Cf. Bisson v. Bank of Am., N.A., 919 F. Supp. 2d 1130, 1135 & n.2 (W.D. Wash. 2013)(concluding there was no injury where plaintiffs failed to allege that they were presently subject to foreclosure proceedings and the defendants had filed affidavits showing that no foreclosure proceedings were pending). Springer's claims for declaratory judgment are of sufficient immediacy and reality because the dispute relates to an alleged liability that has already accrued by virtue of the commencement of foreclosure proceedings. See Dow Jones, 237 F. Supp. 2d at 407; cf. Obal, 2015 WL 631404, at *5 (concluding there was no real controversy because the plaintiff had not argued that the Trust was currently foreclosing on his property or taking any adverse action against him).[2]

Moreover, there is a real dispute about the validity of the assignments. In Rajamin, the plaintiffs challenged the underlying assignment procedures, but the challenge was limited

---

[2] While the FAC alleges that the defendants commenced a foreclosure proceeding on the plaintiff's property, the state of that proceeding is unclear and the Court could not resolve that issue on this motion. At argument, the defendants' counsel was not aware of the status of the foreclosure proceedings. The plaintiff represented that the proceeding was dismissed for some reason and that the defendants were required to re-file the proceeding.

to arguing that the assignments violated the PSA and that the assignments were recorded after the closing date of the trusts, claims for which the plaintiffs lacked prudential standing, or which were not plausible. Rajamin, 757 F.3d at 86, 91. In addition to the meritless arguments rejected in Rajamin, Springer alleges that the assignments violated the deed of trust and were invalid under Nevada law. Springer is a party to the deed of trust and the promissory note. The rights Springer seeks to assert under the First and Twentieth Causes of Action are under the deed of trust and promissory note, not under the Prospectus or PSA. Cf. id. at 87 ("The notes and deeds of trust to which plaintiffs were parties did not confer upon plaintiffs a right against nonparties to those agreements to enforce obligations under separate agreements to which plaintiffs were not parties.")

The district court's dismissal of a similar claim in Le Bouteiller is distinguishable. The district court in that case noted that it was unclear whether a cause of action—similar to Springer's First Cause of Action—that sought a declaratory judgment that the defendant did not have a secured or unsecured interest in the loan was arguing that the assignment never occurred or that the assignment occurred but was invalid. Le Bouteiller, 2015 WL 5334269, at *10 n.5. The district court

dismissed the claim concluding that the complaint and the
exhibits to the complaint showed that the assignment had in fact
occurred and the plaintiff did not plead facts demonstrating
otherwise. Id. Springer does not contend that the assignments
never occurred; he argues that the assignments violated the
terms of the promissory note, the deed of trust, and Nevada law.
Springer's claims are therefore different from the claims
apparently asserted in Le Bouteiller. While the deed of trust
explicitly permitted the sale of the deed of trust together with
the note, Compl., Ex. 1, Springer alleges that the actual
assignments were void under Nevada law because the note and the
deed of trust were not actually assigned together. FAC ¶¶ 292-
96. U.S. Bank has not responded to these allegations.

Having determined that there is an underlying case or
controversy and that this Court has subject matter jurisdiction,
the issue remains whether the Court should exercise its
discretion to decide the declaratory judgment claims in the
First and Twentieth Causes of Action. In other words, would
adjudicating the status of U.S. Bank's interest in the property
and the validity of the assignments under the deed of trust and
the promissory note serve a useful purpose in settling the legal
dispute between the parties and would it afford relief to the
parties? See Cont'l Cas., 977 F.3d at 737. In the Obal case, the

24

district court considered several factors including whether the
declaratory relief would resolve the controversy, whether
declaratory relief would serve a useful purpose in clarifying
the legal relations between the parties, whether the party
seeking declaratory relief was engaging in forum shopping,
whether declaratory relief would create a conflict with another
jurisdiction, and whether a more appropriate form of relief
exists. Obal, 2015 WL 613404, at *6 (citing Dow Jones, 237 F.
Supp. 2d at 408-09).

While the Court in Obal declined to exercise jurisdiction,
a different result is indicated here. In this case, unlike Obal,
a non-judicial foreclosure proceeding has actually been
commenced although its present status is unclear. Moreover, as
discussed below, the parties have agreed that this case should
be transferred to the District of Nevada where the property is
located and the state proceedings are held. The District Court
in Nevada would be in an opportune position to coordinate this
case with any state proceedings and to determine whether to
continue to exercise jurisdiction or not.

However, Springer's declaratory judgment claims cannot
proceed based on the allegation that the defendants failed to
comply with the Prospectus, FAC ¶ 302, because Springer lacks
standing to assert a violation of the Prospectus. See Rajamin,

25

757 F.3d at 85-86.[3] But Springer can pursue his claim that the assignments were invalid under Nevada law and that the foreclosure is defective because only the owner of the note can seek foreclosure and the means by which U.S. Bank obtained the note violated the terms of the note and the deed of trust. FAC ¶¶ 299-301, 293-95. Given U.S. Bank's failure to respond to this argument, the Court need not decide at this time whether the assignments of the promissory note and the deed of trust violated Nevada Law or whether the promissory note and the deed of trust conflict with the assignments. It is sufficient, on a motion to dismiss, to identify which of Springer's causes of action state a viable claim for relief. Thus, U.S. Bank's motion to dismiss the First and Twentieth Causes of Action is denied to the extent Springer pleads that the assignments violate express provisions of the deed of trust and the promissory note and Nevada law. Any claims that the assignments fail because they

---

[3] Springer's claims alleging that the overall securitization process is defective do not survive the motion to dismiss. The Fourteenth Cause of Action for "cancellation of instruments" alleges that the Mortgage Electronic Registration Systems ("MERS"), the entity tasked with keeping track of mortgage assignments, failed to record the transfer properly. FAC ¶ 204. MERS is not a named defendant in the FAC, nor does Springer plead MERS's involvement in the assignments of his mortgage note and deed of trust. The gist of Springer's claim is that the loan was not properly transferred to the Trust "in a timely manner," FAC ¶ 207, but this claim alleging a mistake in documentation is the type of claim for which Springer lacks standing because he is not a beneficiary of the trust. Springer cannot assert a claim based on "bungled securitization." See Barnett v. Countrywide Bank, FSB, 60 F. Supp. 3d 379, 385-86 (E.D.N.Y. 2014) (collecting cases from several jurisdictions including Nevada, where courts rejected challenges to the securitization process). Thus, the Fourteenth Cause of Action should be dismissed.

are inconsistent with the Prospectus are dismissed for the reasons explained above.

## IV.

U.S. Bank also seeks dismissal with prejudice of Springer's remaining claims. For the reasons explained below, the motion to dismiss the Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fifteenth, Sixteenth, Seventeenth, Eighteenth, and Nineteenth Causes of Action is granted.

### A.

According to the FAC, even if the defendants have a valid security interest in the deed of trust and have a valid claim to the note, the defendants have violated several provisions of the Internal Revenue Code ("IRC"). FAC ¶ 20. As part of the Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action, Springer seeks a declaratory judgment that the assignments of the promissory note and deed of trust to U.S. Bank violated the IRC. FAC ¶¶ 127-77.

The FAC contends that under the REMIC provisions of the Code, the assignments must have been transferred to the trust by July 2005. FAC ¶ 58(a). The FAC alleges that the assignments violated several REMIC requirements because the loan was in default at the time of the assignments, FAC ¶ 58(f), was not a qualified loan as required by the IRC, FAC ¶ 58(e), and because

the assignment was not a "True Sale." FAC ¶ 58(g). The FAC alleges that due to these alleged deficiencies, the trust is exposed to significant tax liabilities. FAC ¶ 60.

Springer cannot assert violations of REMIC regulations. First, Springer does not point to any case supporting a private right of action to enforce violations of tax laws and regulations. The weight of well-reasoned authority rejects the existence of such a private right of action. See Reynolds v. de Silva, No. 09-cv-9218 (CM), 2010 WL 743510, at *7 (S.D.N.Y. Feb. 24, 2010) ("The Second Circuit has never decided the question, but district courts in this Circuit have repeatedly held that there is no private right of action to enforce violations of the IRC.") abrogated on other grounds by Katz v. Cellco P'ship, 794 F.3d 341 (2d Cir. 2015); Suozzo v. Bergreen, No. 00-cv-9649 (JGK), 2003 WL 256788, at *2 (S.D.N.Y. Feb. 5, 2003) ("[T]he defendants correctly argue that there is no private right of action for an alleged violation of Section 401, and thus the plaintiff has no claim based on the alleged failure of the Plan to comply with Section 401."). And courts in this district have dismissed claims alleging violations of REMIC regulations. See, e.g., Le Bouteiller, 2015 WL 5334269, at *8-9 (dismissing identical claims because there is no private right of action under 26 U.S.C. §§ 860A-G); McCarty, 2015 WL 5821405, at *5

(dismissing identical claims because the plaintiff "does not have standing to seek relief based on purported tax regulation violations); Obal, 2015 WL 631404, at *4 (dismissing identical claims because the plaintiff lacked prudential standing to seek a declaration that the assignments violated REMIC regulations and because there is no private right of action to enforce these IRC provisions). Thus, all of Springer's claims based on violations of tax laws and regulations fail. The Second, Third, Fourth, Fifth, Sixth, Seventh, and Eighth Causes of Action are therefore dismissed.

The plaintiff also alleges that the defendants' actions violated SEC regulations. The Ninth Cause of Action, however, does not detail what SEC regulations or securities laws the defendants violated. According to the FAC, the defendants misrepresented the value of the trust, and Springer claims to be a whistleblower under SEC Rule 10b-5. FAC ¶ 62. But Springer does not allege facts showing that he satisfies the requirements or procedures for a whistleblower under the Sarbanes-Oxley Act. See 17 C.F.R. § 240.21F-2(a)(1) (defining "whistleblower"). Moreover, the private right of action under Section 10(b) of the Securities Exchange Act of 1934 and Rule 10b-5 promulgated thereunder is reserved only for purchasers or sellers of securities, and Springer does not claim to be either. Blue Chip

Stamps v. Manor Drug Stores, 421 U.S. 723, 739-40 (1975).
Furthermore, as discussed above, Springer does not have standing
to assert that the defendants failed to comply with the
Prospectus. He similarly lacks standing under the securities
laws for allegedly misleading statements in the Prospectus.
Thus, the Ninth Cause of Action should be dismissed.

**B.**

U.S. Bank moves to dismiss the Fifteenth Cause of Action
for fraud and deceit, FAC ¶¶ 212-16, because it does not meet
the heightened pleading standard of Federal Rule of Civil
Procedure 9(b) which requires a plaintiff to plead with
"particularity the circumstances constituting fraud." Fed. R.
Civ. P. 9(b). The complaint must "(1) specify the statements
that the plaintiff contends were fraudulent, (2) identify the
speaker, (3) state where and when the statements were made, and
(4) explain why the statements were fraudulent." ATSI Commc'ns,
Inc. v. Shaar Fund, Ltd., 493 F.3d 87, 99 (2d Cir. 2007). Rule
9(b) is not satisfied where the complaint vaguely attributes the
alleged fraudulent statements to 'defendants.'" Mills v. Polar
Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993).

Springer alleges that the defendants made false
representations, presumably in the process of attempting to
collect mortgage payments from him. See FAC ¶ 215. Springer

contends that the underlying note and deed of trust assignments were in conflict with the terms of the note, and that the underlying assignment transactions were therefore void. FAC ¶¶ 3H-4. Springer alleges that the defendants "committed fraud against the Plaintiff," and that the defendants "knowingly concealed their lack of an enforceable security interest by fabricating and recording false documents" in the Clark County Recorder's Office. FAC ¶¶ 5, 19. But these fraud allegations lack the requisite particularity under Rule 9(b). They do not point to particular misrepresentations or statements by specific defendants. <u>See, e.g.</u>, <u>McCarty</u>, 2015 WL 5821405, at *7 (dismissing without prejudice similar claims for failure to plead fraud with particularity); <u>Obal</u>, 2015 WL 631404, at *7 (denying a similarly worded fraud claim on this basis). Thus, the Fifteenth Cause of Action should be dismissed without prejudice for failure to state a claim.

C.

U.S. Bank moves to dismiss the Sixteenth Cause of Action under New York General Business Law § 349. The FAC alleges that the defendants "knowingly and willfully violated the Deceptive Practices Act by engaging in acts and practices that were misleading in a material way, unfair, deceptive and contrary to public policy and generally recognized standards of business."

FAC ¶ 220. The FAC states that the "deceptive scheme originated in New York, involved communications and statements made in New York, and injured Plaintiff in transactions that occurred in New York." FAC ¶ 223.

"[T]o qualify as a prohibited act under the statute, *the deception of a consumer* must occur in New York." <u>Goshen v. Mut. Life Ins. Co. of N.Y.</u>, 774 N.E.2d 1190, 1195 (N.Y. 2002) (emphasis added). The FAC only refers to conduct in Nevada, FAC ¶¶ 29, 46, 50, and the FAC fails to specify any conduct that occurred in New York. FAC ¶ 220. To the extent the FAC alleges that the scheme was formulated in New York, the Court of Appeals has concluded that such an allegation is insufficient to plead a violation of GBL § 349 under <u>Goshen</u>. <u>Kaufman v. Sirius XM Radio, Inc.</u>, 474 F. App'x 5, 7 (2d Cir. Apr. 4, 2012) (summary order). It is also insufficient to claim that communications and statements took place in New York without alleging that the plaintiff received this information in New York. <u>See</u> <u>id.</u> at 8. The FAC does not specify what information Springer obtained in New York or how Springer was deceived in New York; on the face of the complaint, it is clear that the assignments and recordation of the assignments took place in Clark County. FAC ¶¶ 46, 50. Thus, the Sixteenth Cause of Action should be dismissed.

**D.**

U.S. Bank also moves to dismiss the Seventeenth Cause of Action for violation of the Nevada Deceptive Trade Practices Act, Nev. Rev. Stat. § 598, and provisions of the Nevada Revised Statutes prohibiting unfair competition, §§ 90.600 and 107. The FAC alleges that the defendants "engaged in unfair, unlawful and fraudulent business practices in the State of Nevada" by, among other things, demanding and accepting payment for debts which were "non-existent." FAC ¶¶ 228, 237. U.S. Bank contends that the Nevada statute does not apply to mortgage transactions, an argument to which Springer fails to respond. The Nevada Deceptive Trade Practices Act applies to the sale of goods and services, not to real estate mortgages. Obal, 2015 WL 631404, at *8; Rodriguez v. Bank of Am. Corp., No. 11-cv-01877 (ECR), 2012 WL 3277108, at *2 (D. Nev. Aug. 8, 2012) ("Courts in this jurisdiction have routinely held that the Nevada Deceptive Trade Practices Act does not apply to mortgage transactions and real estate, but only to transactions of goods and services.")(collecting cases). Therefore, the Seventeenth Cause of Action should be dismissed.

**E.**

U.S. Bank moves to dismiss the Eighteenth Cause of Action for violations of the Fair Debt Collection Practices Act ("FDCPA"), 15 U.S.C. § 1692e. U.S. Bank argues that the Trust is not a debt collector, but a creditor collecting for its own account, and is thus not subject to the FDCPA under 15 U.S.C. § 1692a(6)(F).

To plead a FDCPA claim, a plaintiff must show that "(1) he has been the object of collection activity arising from consumer debt; (2) the defendant is a 'debt collector' as defined by the FDCPA; and (3) the defendant has engaged in an act of omission prohibited by the FDCPA." Ogbon v. Beneficial Credit Servs., Inc., No. 10-cv-3760 (GBD), 2011 WL 347222, at *4 (S.D.N.Y. Feb. 1, 2011) (internal citations and quotation marks omitted). Creditors are not considered debt collectors under the FDCPA. Maguire v. Citicorp Retail Servs., Inc., 147 F.3d 232, 235 (2d Cir. 1998). The FAC alleges that U.S. Bank as the Trustee "is in the business where the principal purpose is to collect debts on behalf of the investors in the MASTR." FAC ¶ 257. But U.S. Bank was acting on behalf of the trust that owns the securitized pool of mortgages, including Springer's mortgage. Because U.S. Bank was acting as a creditor, collecting its own debt, it is not a debt collector under the FDCPA. See McCarty, 2015 WL 5821405, at

34

*9; <u>Somin v. Total Cmty. Mgmt. Corp.</u>, 494 F. Supp. 2d 153, 159
(E.D.N.Y. 2007). Thus, the Eighteenth Cause of Action should be
dismissed.

**F.**

U.S. Bank moves to dismiss the Nineteenth Cause of Action
for violation of the Truth in Lending Act ("TILA") because the
claim is time-barred. Springer argues that the defendants failed
to provide notice of change of ownership as required by 15
U.S.C. § 1641(g)(1). In his papers in opposition to the motion
to dismiss, Springer contends that his TILA claim should not be
dismissed because the statute should be liberally interpreted to
protect consumers, but Springer does not address the statute of
limitations argument.

"Where the dates in a complaint show that an action is
barred by a statute of limitations, a defendant may raise the
affirmative defense in a pre-answer motion to dismiss." <u>Ghartey
v. St. John's Queens Hosp.</u>, 869 F.2d 160, 162 (2d Cir. 1989);
<u>see also</u> <u>Twersky v. Yeshiva Univ.</u>, 993 F. Supp. 2d 429, 434
(S.D.N.Y. 2014), <u>aff'd</u>, 579 F. App'x 7 (2d Cir. 2014). Under 15
U.S.C. § 1640(e), TILA claims must be brought within one year
from the date of the occurrence of the violation. <u>Feliciano v.
U.S. Bank Nat'l Ass'n</u>, No. 13-cv-5555 (KBF), 2014 WL 2945798, at
*5 (S.D.N.Y. June 27, 2014). The assignments of the note and

deed of trust took place on April 1, 2009, and October 19, 2012.
FAC ¶¶ 66, 52. Springer initiated this case on February 17,
2015, far outside the one-year statute of limitations for TILA
claims. Therefore, the claim is time-barred, and the Nineteenth
Cause of Action should be dismissed.

### G.

Springer's opposition to the motion to dismiss did not deal
with the authorities cited by U.S. Bank nor did it challenge
U.S. Bank's arguments in support of dismissal of the Second,
Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, Fourteenth,
Fifteenth, Sixteenth, Seventeenth, Eighteenth and Nineteenth
Causes of Action. Because the plaintiff did not address those
arguments, the claims have been abandoned. See Obal, 2015 WL
631404, at *10 (dismissing identical claims because the
opposition to the motion to dismiss did not address the
arguments favoring dismissal); In re Bridge Constr. Servs. of
Fla., Inc., 39 F. Supp. 3d 373, 384 (S.D.N.Y. 2014); Adams v.
N.Y. State Educ. Dep't, 752 F. Supp. 2d 420, 426 (S.D.N.Y. 2010)
("[Plaintiffs' opposition] papers fail to address substantive
grounds raised by [d]efendants' motions [to dismiss], thereby
supporting a finding that the underlying claims have been
abandoned."), aff'd sub nom., Ebewo v. Fairman, 460 F. App'x 67

(2d Cir. 2012). Therefore, the foregoing claims are dismissed on that ground as well.

**H.**

Springer has sought leave to file an amended complaint to replead any claims that were dismissed. Federal Rule of Civil Procedure 15(a) provides that leave to amend a pleading shall be "freely given when justice so requires." See Foman v. Davis, 371 U.S. 178, 182 (1962); Nerney v. Valente & Sons Repair Shop, 66 F.3d 25, 28 (2d Cir. 1995). Valid reasons for denying leave to amend include undue delay, undue prejudice to the opposing party, bad faith or dilatory motive on the part of the movant, and futility of the amendment. Foman, 371 U.S. at 182; Mackensworth v. S.S. Am. Merchant, 28 F.3d 246, 251 (2d Cir. 1994). Generally, the "grant of leave to amend the pleadings pursuant to Rule 15(a) is within the discretion of the trial court." Sanders v. Venture Stores, Inc., 56 F.3d 771, 773 (7th Cir. 1995) (quoting Zenith Radio Corp. v. Hazeltine Research, Inc., 401 U.S. 321, 330 (1971)). When leave to amend would be futile, that is a sufficient reason to deny the plaintiff leave to amend. Acito v. IMCERA Group, Inc., 47 F.3d 47, 55 (2d Cir. 1995); see also Yaba v. Cadwalader, Wickersham & Taft, 931 F. Supp. 271, 274 (S.D.N.Y. 1996). A pro se complaint is to be read liberally. See Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir.

2000) ("Certainly the court should not dismiss without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." (internal citations and quotation marks omitted)).

Here, the plaintiff filed the FAC in response to U.S. Bank's first motion to dismiss filed on June 19, 2015. Dkt. Doc. 11, 15. The FAC narrowed the scope of Springer's claims and attempted to clarify that the claims in the FAC are premised on the assignments' failure to comply with the Prospectus, not on a failure to comply with the PSA. See FAC ¶ 3. However, Springer did not remedy the deficiencies U.S. Bank identified in his other causes of actions. For example, U.S. Bank argued that Springer failed to satisfy the heightened pleading standard for fraud, Dkt. Doc. 12, at 8-10, but Springer did not change his allegations supporting the fraud claim. Compare FAC ¶¶ 212-16 with Compl. ¶¶ 189-93.

It would be futile for Springer to amend the complaint a second time as it pertains to the Second to Fourteenth Causes of Action. Springer does not have standing to bring those claims, and supplemental pleading will not remedy this deficiency. See Le Bouteiller, 2015 WL 5334269, at *11. The same is true of Springer's TILA claim which is barred by the statute of limitations. And as previously discussed, Springer's state law

claims and FDCPA claim fail because the transactions at issue in this case are not within the ambit of the relevant statutory provisions. Thus, repleading these claims would also be futile. With the exception of the Fifteenth Cause of Action for fraud and deceit, the Second to Nineteenth Causes of Action are dismissed with prejudice. The Fifteenth Cause of Action is dismissed without prejudice. Springer may within thirty (30) days of the date of this decision file a second amended complaint with respect to the claims under the First and Twentieth Causes of Actions that survive pursuant to this decision, and Springer may replead the fraud and deceit claim (Fifteenth Cause of Action). If Springer fails to do so, all claims dismissed herein will be dismissed with prejudice.

## I.

During the argument on the motion to dismiss, Springer requested that this Court transfer the case to the District of Nevada. Although Springer is appearing pro se, he pointed out that he has counsel in Nevada in connection with the non-judicial foreclosure proceeding. Counsel for U.S. Bank did not oppose the motion to transfer the case. A district court may exercise its discretion to transfer venue "for the convenience of parties and witnesses, in the interest of justice." 28 U.S.C. § 1404(a). Among the factors to be considered in determining

whether to grant a motion to transfer venue "are, *inter alia:*
(1) the plaintiff's choice of forum, (2) the convenience of
witnesses, (3) the location of relevant documents and relative
ease of access to sources of proof, (4) the convenience of
parties, (5) the locus of operative facts, (6) the availability
of process to compel the attendance of unwilling witnesses, and
(7) the relative means of the parties." N.Y. Marine & Gen. Ins.
Co. v. Lafarge N. Am., Inc., 599 F.3d 102, 112 (2d Cir. 2010)
(internal quotation marks and alteration omitted).

Based on the submissions to the Court, such as the fact
that the property in this case is located in Nevada and that
Springer resides in Nevada, it is plainly appropriate to
transfer the case to the District of Nevada where the case could
have been brought. A substantial part of the events giving rise
to the claims against the defendant occurred in Nevada and
Nevada state law governs at least Springer's remaining claims
under Counts 1 and 20. Moreover, the District Court in Nevada
will be in the best position to coordinate the action with the
non-judicial action that was originally brought in Nevada.

Therefore with the consent of the plaintiff and U.S. Bank,
the motion to transfer the case pursuant to 28 U.S.C. § 1404(a)

40

should be granted. See id.; see also Lyon v. Cornell Univ., No. 97-cv-7070 (JGK), 1998 WL 226193, at * 2 (S.D.N.Y. May 4, 1998).[4]

**CONCLUSION**

The Court has considered all of the parties' remaining arguments. To the extent not specifically addressed above, they are either moot or without merit. For the foregoing reasons, U.S. Bank's motion to dismiss is **granted in part and denied in part.** The Clerk is directed to close **Docket Nos. 11, 18, and 20**. The Clerk of Court is directed to transfer this action forthwith to the District of Nevada. The transfer is on consent of the parties, and Local Rule 83.1, requiring a seven day stay of any order transferring venue, is waived. The Clerk is also directed to close the case on the docket of this Court.

**SO ORDERED.**

Dated:   New York, New York
         December 23, 2015

_____/s/_____

                 **John G. Koeltl
        United States District Judge**

---

[4] The Court has decided the motion to dismiss because it was fully briefed and argued before the plaintiff suggested that this action be transferred to the District of Nevada. The interests of judicial economy suggested that the Court decide so much of the motion as it could. The District Court Judge in Nevada is able to reconsider any of this Court's determinations as that Judge deems appropriate.

41